## Case No. 5,765.

### GREENE v. DARLING et al.

[5 Mason, 201.] [1]

Circuit Court, D. Rhode Island.   Nov. Term, 1828.

#### SET-OFF—DISCONNECTED DEBTS.

1. Courts of equity, independently of any statute of set-off, do not exercise jurisdiction to set off mutual disconnected debts, unless where the dealings of the parties imply it as matter of agreement, or mutual credit.

[Cited in Gordon v. Lewis, Case No. 5,613; Howe v. Sheppard. Id. 6,773; Gordon v. Lewis, Id. 5,614; Drexel v. Berney, 122 U. S. 253, 7 Sup. Ct. 1205; Farmers' Loan & Trust Co. v. Northern Pac. Co., 58 Fed. 266.]

[Cited in Second Nat. Bank v. Hemingray, 34 Ohio St. 390; Leavitt v. Peabody, 62 N. H. 189; Barnes v. McMullins, 78 Mo. 271; Pond v. Harwood, 139 N. Y. 119, 34 N. E. 768.]

2. Quaere, whether in Rhode Island, judgments can be set off against each other, where the debt due to the plaintiff has been assigned before suit brought.

3. An award, upon a submission of a question whether the parties had a right of set-off, is conclusive.

4. Quaere, whether a decision by a court of law, of concurrent jurisdiction on the same point, would not be conclusive.

5. How far notice of a set-off is necessary to defeat the rights of an assignee.

6. Quaere, whether a party, who has procured an assignment of a debt of the plaintiff, can set it off against his own debt due to the plaintiff, which was previously assigned.

[Cited in Wood v. Carr, Case No. 17,940; Aldrich v. Equitable Safety Ins. Co., Id. 155; Whetmore v. Murdock, Id. 17,509.]

[Cited in Buffum v. Deane, 4 Gray, 392; McGraw v. Pettibone, 10 Mich. 537; Spaulding v. Bachus, 122 Mass. 555, 556; Backus v. Spaulding, 129 Mass. 238.]

7. Where a set-off or defence to a debt was available at law, and the party omitted by laches

---

1 [Reported by William P. Mason, Esq.]

to take advantage of it, it seems a court of equity will not relieve him.

[Cited in Howe v. Sheppard, Case No. 6,773; Hendrickson v. Hinckley, 17 How. (58 U. S.) 447.]

[This was a bill in equity by Job Greene against Daniel Darling and Charles B. Jenks.]

Bowen & Whipple, for plaintiff.
Randall & Searle, for defendants.

STORY, Circuit Justice. The present is a bill for an injunction and relief by way of set-off, against a judgment obtained in this court, at November term, 1826, for $695.48. That judgment was rendered in a suit, brought in the name of Daniel Darling, trustee to James Wheaton 3d, against the plaintiff, on a bond given for the liberty of the prison limits by John Pond, as principal, and by the plaintiff and one Stephen Buffum, as sureties, and binding them jointly and severally, in the form prescribed by the statute of Rhode Island. The verdict and judgment were founded upon an escape proved at the trial. Pond was committed to the gaol in Providence on the 20th of March, 1824, on an execution founded on a judgment against him in favour of Daniel Darling, trustee to James Wheaton 3d, for $529.79, and upon that occasion this prison bond (as it is called) was given. This last judgment was founded on a promissory note, dated on the 27th of April, 1821, whereby Pond promised to pay Darling $426.58 on demand, with interest. The note was not negotiable, and therefore, to whomsoever it might be assigned, it could be sued only in the name of the original payee. In point of fact, it passed by assignment to several intermediate persons, and finally, before the commencement of the original suit was assigned to Wheaton, fraudulently, as the bill suggests for whose benefit the suit was instituted. Afterwards, on the 21st of January, 1825, Wheaton assigned the original judgment and bond to the defendant, Jenks, Darling joining in the assignment; and this assignment, also, is suggested in the bill to be fraudulent. The suit on the prison bond was returnable to the June term, 1826, of the circuit court.

The case of set-off stated in the bill is, that the plaintiff is now in possession, as his own property, of certain notes of hand, given by Darling to Pond, on the 20th of May, 1825, to the amount of $1138, which he claims to have set off against the judgment, on the prison bond. The history of the consideration of these notes is stated as follows. Darling, on the 24th of June, 1820, gave his note for $1332.88 payable to Pond or order on demand, with interest. A suit was brought against Darling upon this note by Pond, and a judgment obtained thereupon at September term of the supreme court of Rhode Island, 1823, the very same term, in which the original judgment was rendered in the same court in favour of Darling, as trustee

to Wheaton, against Pond. At that time an attempt was made to set off the judgments against each other; and the attornies of the parties, without the knowledge of Pond, (as he asserts,) submitted the question of the set-off to Wheeler Martin Esq., one of the justices of the same court, who decided against the set-off, and executions issued accordingly upon both judgments, and Darling and Pond were both committed to gaol on execution, for the judgments against them respectively. Pond remained in gaol until he was discharged under the insolvent act of the state, on the 17th of April, 1826. Darling remained in gaol until the 20th of May, 1825, when an arrangement was made between him and Pond without the knowledge or assent of Wheaton, Darling undertaking to discharge the judgment against Pond, and Pond, deducting the amount of that judgment from his own against Darling, and taking from the latter the notes already mentioned for $1138, as the balance due him on his own judgment. It is farther stated in the bill, that Darling was insolvent at the time of the execution of the first note to Pond, in June, 1820, and hath ever since remained so. It is suggested in the bill, that Wheaton is now deceased; and no attempt is made to bring his personal representative before the court; and no reason is assigned for the omission. Such is the posture of the case, as it stands upon the plaintiff's bill; and passing, for the present, the consideration, how far it stands supported in point of fact as to the very material allegations, that the assignments to Wheaton and Jenks were wholly without any consideration and fraudulent, (which are explicitly denied by the answer of Jenks,) let us examine, whether in a court of equity the plaintiff is entitled to the relief prayer for, supposing the whole ground work of his bill to be established.

The first question presented upon a general survey of the case is, as to the jurisdiction of courts of equity to compel a set-off, where there is no legal provision to enforce it. In the state of Rhode Island, the right of set-off is by statute extended only to cases of judgments and executions. The statutes of 1798 [Laws R. I. 1798, p. 140] and 1822 [Laws R. I. 1822, p. 107] (the latter being only a revision of the former,) provide, "that whenever the supreme judicial court, or courts of common pleas shall, at the same term, render final judgment in two or more causes, in which the parties shall be reversed, and shall sue and be sued in the same right and capacity, such court shall offset the same judgments, and issue execution for the balance in favour of the party, to whom it shall be due;" and, "that if any officer shall at any time have two or more executions in personal actions directed to him to serve, in which the parties shall be reversed, and shall sue and be sued in the same right and capacity, he shall offset the same, and levy and collect the balance only from the party, from whom it is

due." To bring any case within the reach of the statute, the parties must be reversed, and sue and be sued in the same right and capacity. Now the bill itself admits, that the very question, whether the two original judgments rendered at September term, 1823, were under the statute liable to be set off, was submitted to a judge of the court, and that he decided, that they could not be set off at law, because the parties were not reversed in the same right and capacity. It is said, that this was an extrajudicial act, and not the act of the court, and therefore, it does not bind as a judgment of the court. Be it·so; but if the parties have submitted it to the decision of a judge, they are bound by that decision, as an award; and unless some other equity intervene, it ought to conclude them. Then it is said, that the submission was without the knowledge of Pond by his attorney; but that, in point of fact, is not established by any evidence. And if it were, it remains to be shown, that it is beyond the scope of an attorney's general authority in cases of this nature. Cases rather more questionable have been held within his authority. Com. Dig. "Attorney," B 9, 10; Inhabitants of ·Buckland v. Inhabitants of Conway, 16 Mass. 396. And if he exceeds it, the remedy for his client is to be sought in his own personal responsibility. But it may not be wholly immaterial to consider, whether there has been any such error in the award or decision, as the argument supposes. The statute of Rhode Island applies solely to suits brought in the same right and capacity. Now, in a strict sense, a suit brought by Darling, as trustee of Wheaton, was not a suit in the same right and capacity, as the suit against him, which was in his own right. Supposing the assignment to be bonâ fide, it is by no means clear, that the statute of Rhode Island meant to reach such a case as the present. Here, the note to Pond was negotiable, and non constat, that the parties at the time of the assignment to Wheaton knew, that it had not been negotiated. There may be an equity in allowing unconnected demands to be set off against each other, where they are both subsisting at the same time, and one has been assigned. But it is by no means so clear an equity, as necessarily to justify an enlarged construction of a statute. For aught that this court can judicially know, it may have been the policy of the legislature of Rhode Island to exclude its own courts from exercising any jurisdiction of set-off, in cases where there had been bonâ fide assignments. See Alsop v. Caines, 10 Johns. 396; Makepeace v. Coates, 8 Mass. 451. Where the assignment is without consideration and a fraudulent evasion of the statute, it might justly be held a mere nullity, and the case within the relief intended by the statute. There is a great distinction between the case of an equity attaching to the very demand assigned, and an equity personally existing in the debtor to set off an unconnected debt.

The cases, which are found in the Reports in other states, for the most part turn either upon their own statutes, or upon principles of the common law, where there are no statutes to govern them. They do not necessarily involve principles, which ought to control the construction of a statute differently from each. See Goodenow v. Buttrick, 7 Mass. 140; Hatch v. Greene, 12 Mass. 195; King v. Fowler, 16 Mass. 397; Stewart v. Anderson, 6 Cranch [10 U. S.] 203; Murray v. Williamson, 3 Bin. 135; Robinson v. Beall, 3 Yeates, 267; Simson v. Hart, 14 Johns. 63; Mitchell v. Oldfield, 4 Term R. 123; Glaister v. Hewer, 8 Term R. 69; Doe v. Darnton, 3 East, 149; Crosse v. Smith, 1 Maule & S. 545; Tucker v. Oxley, 5 Cranch [9 U. S.] 34; James v. Kynnier, 5 Ves. 108; 2 Madd. Ch. Pr. 512. I do not mean to say, that the statute ought to receive the construction, which the judge is supposed to have given it, acting upon the ground of its being a case of a bonâ fide assignment, (as he must be presumed to have done); that is not necessary to be decided, in my view of the case. But if it be doubtful, it is very far from being certain, that upon the reference of a doubtful point to him his decision, even if founded on what may now be deemed a mistake in law, is to be overturned. The point of view in which his decision is now considered, is not as a judicial decision, but as an award. If it had been a judicial decision, it would have required grave consideration, how far it could be re-examined in a court of equity, since there are conflicting doctrines on that point. ·In Ex parte Flint, 1 Swanst. 30, Lord Eldon ·seems to have thought, that if he would grant relief in a case already distinctly decided at law, it ought to be clearly made out, that there was such a mistake. The case of Billon v. Hyde, 1 Ves. Sr. 327, also seems to justify relief in case of a clear mistake of the law, though that case was compromised. Belt, Supp. Ves. 159. See Dinwiddie v. Bailey, 6 Ves. 136. On the other hand, the late learned chancellor of New York, in Simson v. Hart, 1 Johns. Ch. 91, after a very full examination of the authorities, came to the result, that such relief ought not to be granted after a decision of the very point by a court of concurrent jurisdiction. His opinion was, indeed, overturned by the court of errors, but under circumstances of such diversity of judgment among very able judges, that one may well pause, until the point shall be the very hinge on which the cause shall turn.

·Assuming, however, that the award in the present case ought not to be conclusive, what are the grounds, upon which a court of equity ought to interpose; or in other words, what is the jurisdiction, which it is accustomed to exercise in respect to set-offs? I do not speak here of cases, where distinct equities arise from other sources; but upon the naked equity of distinct and unconnected debts, and independently of any statuteable regula-

tions. It is not very easy to ascertain the exact nature and limits of this jurisdiction from the English authorities. Down to the publication of Mr. Montague's book on Set-Off, there does not seem to be any very clear doctrine laid down; for his treatise on this head is singularly brief and unsatisfactory, and consists but of three sentences. Mr. Maddock (1 Madd. Ch. Pr. 70; 2 Madd. Ch. 512, 513) has done little more to enlighten us on the subject, and has merely collected the authorities, principally in bankruptcy.

It has been said, that before the statutes of set-off at law, and the statutes of mutual debts and credits in bankruptcy, courts of equity were in possession of the doctrine of set-off, and acted upon it, as grounded upon principles of natural equity; and that now, when the court does not find a natural equity going beyond the statutes, the construction is the same in equity as at law. But that the bankrupt act, enabling the party to prove the balance of the account upon mutual credit, has gone much farther than the party could have gone either in law or equity before, as to set-off. Ex parte Stephens, 11 Ves. 26; Ex parte Blagden, 19 Ves. 464. This is not a very instructive account of what the jurisdiction in equity actually is. Lord Mansfield, in Green v. Farmer, 4 Burrows, 2214, 2220, said, that "natural equity says, that cross demands should compensate each other, by deducting the less sum from the greater; and that the difference is the only sum, which can be justly due. But positive law for the sake of the forms of proceeding and convenience of trial, has said, that each must sue, and recover separately in separate actions. Where the nature of the employment, transaction, or dealing, necessarily constitutes an account consisting of receipts and payments, debts and credits, it is certain, that only the balance can be the debt; and by the proper forms of proceeding in courts of law or equity the balance only can be recovered. Where there were mutual debts unconnected, the law said they should not be set off; but each must sue. And courts of equity followed the same rule, because it was the law; for had they done otherwise, they would have stopped the course of the law, in all cases where there was a mutual demand." If his lordship be correct in this account of the matter, courts of equity did not antecedently to the statutes exercise any jurisdiction as to set-off, unless some equity intervened, independently of the fact of mutual, unconnected debts. Lanesborough v. Jones, 1 P. Wms. 325, has been thought to establish an equitable right of set-off under other circumstances. Mont. Set-Off, bk. 2, p. 60. But it is questionable upon the report of that case, whether the act of parliament, under which an assignment was made of Cogg's estate, did not subject him to the general operation of the provisions of the bankrupt acts; for the act of 4 Anne, c. 17, § 11, as to mutual credits, formed the

ground-work of the reasoning of the court. If, however, the case turned upon a more general ground, it was, that the mutual credit and the additional fact of Coggs's insolvency, created a new equity. See Simson v. Hart, 14 Johns. 63. The case, there put, of a set-off of a separate debt against a partnership debt, where there is a surplus belonging to the debtor partner, was not decided. Ex parte Edwards, 1 Atk. 100, looks more towards the establishment of that point; but that case was not brought to a decision. In Ex parte Quinten, 3 Ves. 248, the point was decided. But that case has been shaken by later decisions, and particularly by Ex parte Twogood, 11 Ves. 517, and Addis v. Knight, 2 Mer. 117. And, at all events, the fact of bankruptcy also intervened. It is also material to observe, that in all these cases the neat point did not arise, as to the mere set-off of mutual debts, but of joint debts against separate debts, or è converso. Now the general rule in equity is like that at law, that there can be no set-off of joint debts against separate debts, unless some new equity justify it. See cases cited in Jackson v. Robinson [Case No. 7,144]; Ex parte Twogood, 11 Ves. 517; Vulliamy v. Noble, 3 Mer. 593, 618. Such an equity may arise under circumstances of fraud; or where the party seeking relief is only a surety for a debt really separate; or where there are a series of transactions, in which joint credit is given with reference to the separate debt. Ex parte Stephens, 11 Ves. 24; Ex parte Blagden, 19 Ves. 465; Ex parte Hanson, 12 Ves. 346, 18 Ves. 232; Vulliamy v. Noble, 3 Mer. 593, 618, 619, 621.

The strong impression left upon my mind by other authorities is, that Lord Mansfield's doctrine, as to the jurisdiction of set-off in equity, is not in its general latitude, and without some qualifications, maintainable. It seems irreconcileable with what fell from Lord Cowper, in Lanesborough v. Jones, 1 P. Wms. 326, who said, that "it was natural justice and equity, that in all cases of mutual credit only the balance should be paid;" and that if Coggs had not been bankrupt, and had brought a bill to foreclose his mortgage, he could have recovered only the balance, after deducting the notes due to the other party. Lord Cowper here relies on the fact of mutual credit, (by which I understand him to intend, a credit founded on a knowledge of, and trust to, the existing debts,) as itself, in a case of insolvency, furnishing an equity. And other cases well warrant that distinction. It was acted upon by the lord keeper in Curson v. African Co., 1 Vern. 121. In Downam v. Matthews, Finch, Prec. 580, where there were mutual dealings on each side, and independent debts, the lord chancellor held, that a set-off ought to be allowed, because the mode of dealing furnished a strong presumption of an agreement to this purpose, and that without such liberty of retaining against each other, the parties would not have continued on their dealings. In the

case of Hawkins v. Freeman, 2 Eq. Cas. Abr. 10 pl. 10, 8 Vin. Abr. 560, pl. 26, the decision was precisely to the same effect. See, also, Lord Hale's decision, cited in Chapman v. Derby, 2 Vern. 117. Peters v. Soame, 2 Vern. 428, probably turned on the same point. The like presumption of mutual credit, and right of stoppage flowing therefrom in equity, was acted upon in Jeffs v. Wood, 2 P. Wms. 128, where the master of the rolls seems, indeed, to intimate his own opinion, that a broader doctrine might be maintainable; and that very slight circumstances ought to be taken hold of to justify the presumption. In Whitaker v. Rush, 1 Amb. 407, Sir Thomas Clarke, the master of the rolls, gave a history of the doctrine, and laid great stress on the distinction, whether there was mutual credit, or not. He said, that "it was a rule of justice to set off one debt against another in the Roman law. That rule did not prevail in England for many years. The dealings between bankrupts and other persons first gave occasion to its being introduced into England by statute of 5 Geo. II." It had been introduced before by a temporary statute (4 Anne, c. 17, § 11). "Equity took it up, but with limitations and restrictions, and required, that there should be a connexion between the demands. In Downam v. Matthews, Lord Macclesfield said, that the mutual dealing raised a presumption, that the one should be set off against the other." And he founded his decree, in part, upon the fact, that there was no connexion in the demands in that case. The same principle runs through later cases, such as James v. Kynnier, 5 Ves. 108, and Vulliamy v. Noble, 3 Mer. 593, 618; and Ex parte Flint, 1 Swanst. 30. The phrase "natural equity" occurs frequently in the Reports in cases on this subject; and it is difficult to give it any rational interpretation in the places, where it occurs, unless it means, that there is a natural equity to have mutual and disconnected debts set off, which courts of chancery will, in certain cases, enforce. Ex parte Stephens, 11 Ves. 24, 27; Ex parte Flint, 1 Swanst. 30. See, also, what is said by Lord Mansfield in Collins v. Collins, 2 Burrows, 820, 826. This is the ground, upon which courts of law have vindicated their right to set off judgments against each other. The doctrine is strongly hinted at on various occasions; and, indeed, I know not how, upon any other principle than this, many of the modern decisions in equity can be supported. In James v. Kynnier, 5 Ves. 108, the lord chancellor said, "Is there any doubt, that where there are mutual credits between the parties, though they cannot set off at law, yet it is the common ground for a bill? If J. had brought an action against M. upon the note, supposing no bankruptcy had taken place, I should have stopped the action while he was debtor on the bond." In Lechmere v. Hawkins. 2 Esp. 626, Lord Kenyon recognized the authority of courts of equity to enforce a set-off, when

refused at law, even where the party had come under an honorary obligation not to insist on it; and this doctrine was affirmed in Taylor v. Okey, 13 Ves. 180. Ex parte Hanson, 12 Ves. 346, assumes, that some jurisdiction existed before the statutes, as does Ex parte Blagden, 19 Ves. 465.

The conclusion, which seems deducible from the general current of the English decisions,—Mitchell v. Oldfield, 4 Term R. 123; Barker v. Braham, 2 W. Bl. 869, 3 Wils. 396; Glaister v. Hewer, 8 Term R. 69; Simson v. Hart, 14 Johns. 63, 1 Johns. Ch. 93; Waln's Assignee v. Bank of North America, 8 Serg. & R. 73,—(though most of them have arisen in bankruptcy,) is, that courts of equity will set off distinct debts, where there has been a mutual credit, upon the principles of natural justice, to avoid circuity of suits, following the doctrine of compensation of the civil law to a limited extent. 1 Poth. Obl. (by Evans) p. 365; 2 Poth. Obl. (by Evans) Append. 13, p. 98. That law went farther than ours, deeming the debts, suo jure, set-off or extinguished pro tanto; whereas, our law gives the party an election to set off, if he chooses to exercise it; but if he does not, the debt is left in full force, to be recovered in an adversary suit. 1 Poth. Obl. (by Evans) p. 365; 2 Poth. Obl. (by Evans) Append. 13, p. 98. Since the statutes of set-off of mutual debts and credits, courts of equity have generally followed the course adopted in the construction of the statutes by courts of law; and have applied the doctrine to equitable debts (see Taylor v. Okey, 13 Ves. 180); they have rarely, if ever, broken in upon the decisions at law, unless some other equity intervened, which justified them in granting relief beyond the rules of law, such as has been already alluded to. And, on the other hand, courts of law sometimes set off equitable against legal debts, as in Bottomley v. Brooke, cited 1 Term R. 619. See Crosse v. Smith, 1 Maule & S. 545. The American courts have generally adopted the same principles, as far as the statutes of set-off of the respective states have enabled them to act. See Caines v. Brisban, 13 Johns. 9, 10 Johns. 396; Gordon v. Bowne, 2 Johns. 150; Ford v. Stuart, 19 Johns. 342; Carpenter v. Butterfield, 3 Johns. Cas. 145; Duncan v. Lyon, 3 Johns. Ch. 351; Goodwin v. Cunningham, 12 Mass. 193; Greene v. Hatch, 12 Mass. 195; Jones v. Witter, 13 Mass. 304; Johnson v. Bridge, 6 Cow. 693; McDonald v. Neilson, 2 Cow. 139; Murray v. Williamson, 3 Bin. 135; Primer v. Kuhn, 1 Dall. [1 U. S.] 452. As, then, in the most favourable light, in which the jurisdiction of courts of equity can be viewed, the mere existence of distinct debts without mutual credit did not give a right of set-off in equity (see 2 Evans, Poth. Obl. p. 98), it will be difficult to establish, that in a state not recognizing any set-offs by its own statutes, except of judgments and executions, a court of equity sitting here ought to assume a broader jurisdiction. I agree, that this

court has a general equity jurisdiction; but it cannot go beyond the principles, which belong to that jurisdiction.

Let us consider, then, the circumstances, upon which the interposition of the court is asked in the present case. In the first place it is said, that here there were mutual debts existing between Darling and Pond, and that an equity existed to have them set off against each other, which attached to the debts themselves, and travelled with them into whosesoever hands they might come; and therefore it ought now to be asserted in favour of the assignee of Darling's debt against the assignee of Pond's debt, assuming both assignments to be bonâ fide. That the balance only after such deduction could be recovered by Pond; and nothing could be recovered by Darling. This is a very comprehensive proposition; and it is very desirable to have had some authorities cited, which bear it out in its full extent. None, however, have been cited at the bar; and the court is left to grapple with it without such assistance. My own researches have not enabled me to find a single case, in which, to such an extent, it is decided, or even intimated; and unless the preceding view of the English decisions on this subject is erroneous, none can be presumed to exist in England. For if a court of equity there would not set off debts, unless there was some mutual credit relative to them, arising from the course of dealing of the parties, it cannot be that any equity of set-off attaches to the debt itself. Where a chose in action is assigned, it may be admitted, that the assignee takes it subject to all the equities existing between the original parties, as to that very chose in action, so assigned. But that is very different from admitting, that he takes subject to all equities subsisting between the parties as to other debts or transactions. There is a wide distinction between the cases. An assignment of a chose in action conveys merely the rights, which the assignor then possesses to that thing. But such an assignment does not necessarily draw after it all other equities of an independent nature. Then, again, what is the right of set-off? By our law it is not a compensation, balancing debts pro tanto, as in the civil law; but mere matter of defence. See 2 Evans, Poth. Obl. No. 13, p. 98. The party is not bound to make use of it. He has his election; and if he does not assert it, his debt is not extinguished. It is a personal privilege, and not an incident or accompaniment of the debt. If a person assign a debt, he does not thereby assign any equity he may have to set it off against the debtor. Set-offs can only be between the parties to the record, or those for whose benefit the suit is brought. An assignee of a debt may set it off against a debt due by himself to the plaintiff; but certainly not against a debt due from the assignor to the plaintiff; nor could the assignor himself, after such assignment, set it off against the plaintiff. The right of set-off, in short, does not depend upon the mutuality of debts in their origin, as an inherent quality attaching itself to such debts, but upon the situation and rights of the parties, between whom it is sought to be enforced; and whether the suit be at law or in equity, there must be personal debts existing between them, and not merely between either of them, and third persons. As has been very properly remarked at the bar, it is a privilege or right attaching to the remedy only; which in some states may be allowed by their laws, and in others, denied. But it touches not any obligation of contract or vested right. But it is said, that the right of set-off is an equity, which at all events the original debtor may assert against the assignor, and also against his assignee of the debt, whether he has, or has not notice of its existence. If by an equity is meant a mere dictate of natural justice in a general sense, it is not worth while to discuss it, because this court is not called upon to administer a system of mere universal principles. If by an equity is meant a right, which a court of equity ought to enforce, it remains to be proved, that such an equity exists in the jurisprudence, which this court is called upon to administer. The English court of chancery has as yet laid down no such general rule. Where there are mutual debts subsisting, and there is either an implied or express agreement of stoppage pro tanto, or mutual credit, doubtless a court of equity would enforce it against the party himself, and against his assignee with notice; that it would enforce it against his assignee without notice is not so clear; and to say the least of it, would trench upon some of its known doctrines, for the protection of bonâ fide purchasers.

There are some American cases, in which a doctrine approaching to this extent has been entertained by courts of law; but, upon examination, they will be found to rest either upon the construction of local statutes, or upon local jurisprudence. Stewart v. Anderson, 6 Cranch [10 U. S.] 203, belongs to the former class. Robinson v. Beall, 3 Yeates, 267, possibly belongs to the latter. No reasons are given for it; and it may have turned upon the more general doctrine, or upon the settled construction of the statute of set-off of Pennsylvania. In Greene v. Hatch, 12 Mass. 195, it was held, that judgments might be set off against each other notwithstanding an assignment, where the demands, on which the judgments were founded, were coeval, and the assignee had notice. But in Makepeace v. Coates, 8 Mass. 451, the same court refused to set-off judgments, where there was an assignment, made by an insolvent debtor, and the party, who sought to set off his judgment, had purchased the demand after the insolvency, but before the assignment. And King v. Fowler, 16 Mass. 397, shows the extreme caution of the court in interfering in

such cases. In Alsop v. Caines, 10 Johns. 396, the court thought, that cases of complicated trusts, where the debt sued for was assigned, and the nominal plaintiffs were alleged to be trustees of a debtor of the defendant, were not fit subjects of set-off at law, upon grounds, which it seems extremely difficult to answer. That case was re-examined in 13 Johns. 9. and confirmed on a writ of error perhaps for different reasons. One of the judges in the court of errors stated, that the assignee took the debt subject to all the equities between the original parties, of which the right of set-off was one; but this point was not relied on by the only other member of the court, who delivered an opinion. In O'Callaghan v. Sawyer, 5 Johns. 118, it was decided, that the holder of a note assigned, after it became due, took it subject to all equities, which existed against it between the original parties, not only as to the note itself, but as to set-offs. And this decision has been followed in the bank of Niagara v. McCracken, 18 Johns. 493, and Ford v. Stuart, 19 Johns. 342, and may be considered as the settled law of that state, not only as to set-offs of debts, but of judgments against each other. See, also, Gould v. Chase, 16 Johns. 226; Henry v. Brown, 19 Johns. 49. In the latter case the principle applies as well, where the judgments have been assigned, as where they remain in the original parties (Chamberlain v. Day, 3 Cow. 353); but in neither case can a set-off be allowed of a debt due from the assignee, and not from the plaintiff on record (Wheeler v. Raymond, 5 Cow. 231; Johnson v. Bredge, 6 Cow. 693).

These are the most material of the American cases, which have fallen under my observation; and they are open to some remarks. In the first place, most of them purport to be founded upon local statutes, where the right of set-off in common law suits before judgment is provided for by statute, and the question was under what circumstances that right should be allowed, or defeated at law. In Rhode Island, no like statute of set-off exists; and what might be very fit in order to carry into effect the legislative intention once expressed, may not be equally fit to be assumed, as mere matter of equity, independently of any such intention. In the next place, those cases, which are set-offs of judgments, proceed upon the general authority of courts of law in their discretion to set-off judgments, upon what such courts may deem an equity, (a jurisdiction, full of delicacy and danger in cases of complicated trusts and assignments, as the cases sufficiently instruct us), where there is no statute to regulate it. In Rhode Island, there is a statute, which limits such set-offs to cases, where the parties are reversed. and sue in the same right and capacity. There is no pretence to say, that in Rhode Island an assigned judgment of a third person against the plaintiff could be set off in favour

of the defendant, who had purchased it, against the plaintiff's own judgment. The parties in such case would not be reversed. There being .then no statute of set-off of mutual demands generally in Rhode Island, no right of set-off can arise at law between the parties themselves, as to such demands, which ought to be protected by courts of equity, and upheld against subsequent assignments. If such right exists in equity, it is because courts of equity have created it, independently of law. I have endeavoured to show, that such a right has not yet been recognized in equity from the mere existence of mutual debts, even in regard to the parties themselves. But if it were otherwise, it would present quite a different consideration, where a debt had been assigned bonâ fide before suit. In such a case, if the assignee had no notice of any existing counter demand. where is the equity of giving it effect against him? It would in Rhode Island be quite a different thing, where the debt was assigned after both the judgments were rendered; for then the rule of the American cases might bear upon the question with far more force, I do not say with how conclusive a force. It would then be a case, where a court of equity would be called upon to enforce a legal right of set-off against an assignment, which would interrupt it.

In this view of the matter it is, in my judgment, most material to disprove, that the assignment to Wheaton was bona fide. And, indeed, if an assignment was bona fide made to any other of the assignees, through whom he claims, he seems entitled to the full protection of their title. The presumption of bona fides is certainly strong, from the award of Judge Martin. It is asserted in Jenks's answer, and he also maintains, that the assignment to himself was bona fide. and for a valuable consideration. Upon both of these points, much testimony has been introduced by the parties, some of which is quite loose and unsatisfactory, and of doubtful character. It is questionable, whether Darling's testimony is competent; but it is unnecessary to decide that, as it is completely demolished by the opposing evidence, so far as it constitutes a ground of reliance for the plaintiff. I do not say, that there are no circumstances of suspicion attached by the evidence to the title of Wheaton and Jenks; but taking the clear denial of the answer with the corroborative proofs, the weight of the evidence is strong in favour of the bona fides of the title, and purchase of both. It is so strong, that a court of equity would not be at liberty upon its own principles to decree otherwise; or at least, sitting in equity, I should feel it my duty to abstain from such a decree. It must be taken, therefore. that the title and purchase of Wheaton and Jenks stand both unimpeached, and unimpeachable.

But if this difficulty were not absolutely insuperable, there are some others, which lie in

the way of the relief sought, of no inconsiderable magnitude. In the first place, it is by no means clear, that the plaintiff has made out any title by assignment from Pond of the very debt, which he seeks to set off. That debt is not the judgment of Pond, for that has been discharged; and, as a matter of set-off under the Rhode Island statute by way of judgment. it is gone. The notes now set up as a set-off grew out of that judgment, but they cannot be now set off, as a remaining part of that judgment. They are to be set off, if at all, as debts in pais by simple contract. The plaintiff's title and property in the notes are expressly put in issue by the answer, and it is denied, that they constitute a good subsisting debt even against Darling. Now, there is some cloud thrown over the original validity of the debt, on which the judgment against Darling was founded, which ought to have been removed, since it goes to the very gist of the argument, on which the plaintiff rests his claim for relief; I mean, the existence of mutual debts between Pond and Darling. And then, again, there is no proof, that these notes have been transferred by Pond to the plaintiff bona fide, and for a valuable consideration. If he holds them merely in trust for Pond, he is not entitled to maintain them as a set-off to his own debt. See Gilman v. Van Slyck, 7 Cow. 469; Satterlee v. Ten Eyck, 7 Cow. 408. For assuming, that where there is a separate debt, secured by a joint bond as security, upon equitable considerations a creditor. who has such joint security, cannot resort to it without allowing a separate debt, which the debtor has against him to be deducted, where there has been mutual credit (Ex parte Hanson, 18 Ves. 232), still that is to be done upon application by the debtor, and not by the surety without his assent, or at least without his being made a party. If this difficulty were overcome, still there is the fact that the debt was assigned by Pond to the plaintiff, after the judgment and bond were assigned to Jenks, and with full notice of all the facts. The bill does not pretend to assert the contrary; and the assignment to Wheaton is apparent both upon the face of the judgment and bond. Now, if the assignments to Wheaton and Jenks were bona fide, it would be hard to say, that their equity to satisfaction should be defeated by a subsequent purchase by the plaintiff of a debt of Darling's, with full notice of such equity, under circumstances like the present. I have said, that difficulties would exist, even if the assignments to Wheaton and Jenks were not bona fide, and the reason is, that they may protect themselves against the set-off by establishing any bona fide assignment in those, under whom they claim. They claim through Henry Thayer and John Thayer. There is no pretence to say. that Henry Thayer is not a bona fide assignee; and if John Thayer be not. upon the evidence in the case, it would seem to be a matter wholly between him and Henry Thay-

er, with which Darling had nothing to do. If there be any infirmity in the title of John Thayer, it is an infirmity, which does not make the whole transaction void; but only voidable, if the proper parties contest it. Be this as it may, the bill is not adapted to reach such a case. It does not make either of the Thayers parties; and the answer, setting up their title and the mesne conveyances to Wheaton, asserts it to be bona fide. It is not established in evidence to be otherwise. And under a bill, framed like the present, it is impossible to set aside their title. They would be indispensable parties, as having rights, which might be vitally affected.

There is another difficulty, which has been suggested by one of the counsel for the plaintiff, and which is entitled to great weight. If the assignments were all fraudulent or void, then Darling continued the real owner of the debt up to the time, when he discharged it in May, 1825, and consequently, if the judgment was discharged, it constituted a good defence at law to a suit on the prison bond, which was for the security of it. The defence should then have been made at law; and the bill assigns no reason, why it was not made. If a party, by his own gross laches, omits to make a defence at law, which he was competent to make. courts of equity are not in the habit of relieving him from the judgment obtained against him by his own negligence. Upon the whole, my judgment is, that the bill ought to be dismissed, and the injunction dissolved. Judgment accordingly.