## KEIGHTLEY *v.* WALLS and Another.

SATISFACTION OF MUTUAL CLAIMS, NOT IN JUDGMENT.—Suit by A against B and C, upon a promissory note made by B. The complaint alleged that B, being insolvent, had, for the purpose of defrauding his creditors, assigned all of his notes and accounts to C, and among them a note made by A to him. Prayer for judgment against B, and that the assignment to C might be declared fraudulent, and the amount of plaintiff's indebtedness to B be allowed as a set-off on the note sued on. On the trial, it appeared that C was the attorney of B, and that the assignment of the note against A was in trust to collect the same, and apply the proceeds *pro rata* upon the domestic debts of B. None of the creditors had been consulted, and but one of them assented to the arrangement.

*Held,* that though the note against A, assigned by B to C, must be regarded as belonging in equity to B, yet A was not entitled, before both claims had passed into judgment, to obtain satisfaction of his debt to B, by applying it upon the claim sued upon, without proof of B's insolvency.

*Held,* also, that the rule in equity is, that such relief will not be granted, where the claims are wholly disconnected, unless there are some special circumstances, such as the insolvency or non-residence of the defendant.

APPEAL from the *Putnam* Common Pleas.

FRAZER, J.—The appellant sued *Walls* and *Eckels,* alleging in his complaint that he held, by indorsement, a note against *Walls* for $1552 30, then due and unpaid; that *Walls* was insolvent; and that to defraud, hinder, and delay his creditors, *Walls* had combined with *Eckels,* and, without consideration, had in *December,* 1863, assigned and trans-

ferred to the latter all his notes and accounts, amounting to $7500, and, amongst others, a note against the plaintiff, which *Eckels* still held. Judgment was prayed against *Walls* for the amount of the first mentioned note; that the assignment of the note against the plaintiff to *Eckels* be declared void, and that a set-off be allowed, &c. Issue was taken upon the complaint by the general denial, upon which there was a finding and judgment against the defendant *Walls*, and in favor of the defendant *Eckels*. The court below having overruled a motion, by the plaintiff, for a new trial against *Eckels,* the plaintiff appeals to this court, and assigns that ruling for error.

It is claimed that, upon the evidence, the finding ought to have been against *Eckels.* It is to be regretted that, in a case of this importance, we are without any argument whatever on behalf of the appellees.

The principal facts alleged in the complaint, with a single exception, were clearly established by proof. The chief controversy being, as we suppose, whether the assignment to *Eckels* by *Walls* was, as to creditors, fraudulent and void. Upon that subject, the testimony of *Eckels* himself, who was a witness, was that he was the attorney of *Walls;* that *Walls* indorsed and delivered to *Eckels,* as his own attorney, in trust for creditors of *Walls,* notes and checks to the amount of about $6200, nearly all of which was to go to certain non-resident creditors, specified amounts to each, if they would accept the same, which they afterward did, and the paper was accordingly delivered to them; that two notes against the plaintiff, one for $1424, and the other for $347 67, were to be collected by *Eckels,* and applied *pro rata* upon the *Indiana* debts of *Walls,* which amounted to about $7300. No creditor was consulted about this arrangement, and but one of the *Indiana* creditors had ever assented to it. It was shown, also, that *Eckels* received for himself $300, in part for a claim due him, and in part for professional services to be

rendered in litigation, which was anticipated in the matter. But the record does not show any proof of *Walls'* insolvency.

In the absence of all proof that *Walls* was, when the property was transferred, in embarrassed or failing circumstances, the act concerning voluntary assignments (1 G. & H. 114,) can have no application whatever to the present case. And inasmuch as there is a like absence of evidence tending to show that he has ever been insolvent, the entire question of fraud may be deemed disposed of, for we are not to assume, without evidence, that *Walls* has not sufficient property subject to execution, out of which the plaintiff can make his judgment.

That the transfer to *Eckels* is void as to creditors, and that the assets in his hands can be reached by the plaintiff, if he cannot otherwise obtain satisfaction of his claim, is clear enough; but that is not the question presented by the evidence. The question arising, if we treat, as we think we must, the note against the plaintiff, held by *Eckels*, as belonging in equity to *Walls*, is simply this: whether the plaintiff, without proof of *Walls'* insolvency, can thus obtain satisfaction of his own outstanding indebtedness, before both have passed into judgment? The appellant does not discuss this question, having overlooked the circumstance that his averment of insolvency is without proof.

After a somewhat careful examination, we have not found any case which would sustain an affirmative solution of the question. It will be remembered that we have no statute changing the law upon the subject, and the rule in equity seems to be, not to grant the relief where the demands are wholly disconnected, as in this case, unless there are some special circumstances, such as the insolvency or non-residence of the defendant, or other extraneous facts, to form the basis of equity jurisdiction. 2 Paige 581; 2 M'Cord's Ch. 184; 5 Mason 201; 2 Edw. 73; 7 Mon. 457; 1 *id.* 134; 2 J. J. Marsh. 365; 3 A. K. Marsh. 6. The rule of the civil law was otherwise, and it

prevails in most of the countries of Continental Europe. The wonder is, that a jurisdiction so just should never have obtained in the courts of chancery, which have drawn so largely from that source.

The judgment is affirmed, with costs.

*Williamson & Daggy*, for appellant.

*Eckels & Scott*, for appellees.