### EIGENMANN ET AL. *v.* CLARK ET AL.

[No. 2,616.   Filed November 4, 1898.]

SET-OFF.—*Equitable Set-Off.*—The provisions of section 351, Burns'
R. S. 1894, that "a set-off shall be allowed only in actions for money
demands upon contract, and must consist of matter arising out of
debt, duty or contract, liquidated or not, held by the defendant at
the time the suit was commenced, and matured at or before the
time it is offered as a set-off" will not prevent an equitable set-off.
*pp. 132-138.*

SAME.—*Bills and Notes.*—*Principal and Surety.*—*Insolvency of Prin-
cipal.*—*Equitable Set-Off.*—Where a surety on a promissory note by
reason of the insolvency of the maker was required to pay the note,
he is entitled to have the amount so paid set off against a note exe-
cuted by him to such insolvent person and assigned to a third per-
son, although such note was not paid by him until after suit was
begun on the note assigned.   *pp. 132-138.*

From the Perry Circuit Court.   *Affirmed.*

*William Henning, Edward C. Henning* and *W. A.
Land,* for appellants.

*Elliott & Elliott, Sidney B. Hatfield, James A.
Hemenway* and *Frank H. Hatfield,* for appellees.

COMSTOCK, J.—Appellants brought this action on
three promissory notes, executed by Abram D. Clark
and Emma Clark, his wife, May 4, 1894, for $500 each,
payable to Samuel L. Sulzer in thirty, sixty, and
ninety days, respectively, and assigned by Samuel L.
Sulzer to appellants November 30, 1894.   To the com-
plaint of appellants, which is in ordinary form, the
defendants filed separate answers,—Abram D. Clark,
in four paragraphs; his codefendant, Emma Clark, in
two paragraphs.   The first paragraph of the separate
answer of Abram D. Clark is the general denial; the
second, third, and fourth are in the nature of set-off.
The first paragraph of the separate answer of Emma
Clark is the general issue; the second, coverture.   To

these separate answers the plaintiffs replied by general denial. The court found for the defendant Abram D. Clark, that he was entitled to his set-off; and for Emma Clark, on her plea of coverture. The plaintiffs filed their motion for a new trial, for the reasons that "the finding and decision of the court is contrary to law; that the finding and decision of the court is contrary to the evidence; that the finding and decision of the court is contrary to the law and the evidence." The court overruled the motion for a new trial. This action of the court is the only error assigned.

The liability of Emma Clark is not discussed, and the only question, therefore, that we are called upon to determine, is whether Abram D. Clark is entitled to his set-off, as pleaded, according to the evidence.

Substantially the facts as disclosed by the evidence are as follows: In May, 1894, Samuel L. Sulzer was engaged in the mercantile business in the city of Cannelton, and had been for many years prior thereto. In connection with his store, he also operated what was known as the "Commercial Bank," a private concern. At the date above mentioned Abram D. Clark was engaged in the pottery business. Clark had from time to time drawn out of the Commercial Bank various amounts of money, to be used in his business. It was found on the 4th day of May, 1894, that Clark had overdrawn his account in the bank to the extent of $1,500, for which he and his wife executed the three notes now in controversy. After the execution of the three notes, and before the assignment to appellants, one James P. Jackson had deposited with Sulzer, on banking terms $2,500, and on the 12th of November, 1894, Jackson required him to execute his note to him therefor, due in thirty days, and on this note Abram D. Clark and M. F. Casper became sureties. The date

of this note was November 12, 1894, and payable in thirty days after date. This note was commercial paper, being payable at the National Bank of Rising Sun, Indiana. After the execution of the note to James P. Jackson, Samuel L. Sulzer executed a bill of sale to the plaintiffs of his entire stock of goods, bank fixtures, accounts, and notes, and all personal property of every description. This bill of sale was executed and possession given to the property thereunder November 30, 1894,—after the execution of the Jackson note, but before the maturity thereof. By this means plaintiffs became the owners of the three notes mentioned in their complaint. On the 13th day of December, 1894, the plaintiffs filed their complaint in this cause, in the office of the clerk of the Perry Circuit Court, and caused a summons to issue to the sheriff of Perry county on that day. The summons was served by the sheriff on the 14th day of December, 1894. The note executed by said Samuel L. Sulzer and Abram D. Clark to James P. Jackson for $2,500 was paid by Clark and Casper December 15, 1894. At the time of said payment, Clark had no notice of the suit. Thus, it will be seen that after the filing of plaintiffs' complaint, and the issuing and service of summons, but before he had any notice of this suit, the defendant Abram D. Clark paid one-half of the Jackson note; and for that reason, he maintains, he should be allowed the amount so paid as a set-off against plaintiffs' claim. Appellants' position is that the notes in suit passed absolutely to plaintiffs by virtue of the bill of sale executed to plaintiffs November 30, 1894, by Samuel L. Sulzer, and they took the notes subject to such defenses only as existed at that time; that the liability of Clark by reason of his suretyship on the Jackson note was only a contingent liability; that the fact that Clark paid his part of the $2,500

note due Jackson after the suit was commenced by plaintiffs does not entitle him to a set-off, because by the provisions of section 351, Burns' R. S. 1894 (348, Horner's R. S. 1897): "A set-off shall be allowed only in actions for money demands upon contract, and must consist of matter arising out of debt, duty or contract, liquidated or not, held by the defendant at the time the suit was commenced, and matured at or before the time it is offered as a set-off." *Balser* v. *Wood*, 69 Ind. 122; *Claflin* v. *Dawson*, 58 Ind. 408; *Convery* v. *Langdon*, 66 Ind. 311; *Gregory* v. *Gregory, Adm.*, 89 Ind. 346; *Blount* v. *Rick*, 107 Ind. 244, and other cases, and Waterman on Set-Off, section 73, cited by appellants' counsel, state the general rule as to set-off under the statute, and support appellants' position, that the suretyship of Clark was only a contingent liability, and did not constitute a demand held by him at the time of the commencement of the suit, within the meaning of the statute. It must be conceded, therefore, that appellee Clark, not having paid the Jackson note until after appellant had brought suit, in this case cannot, under the statutory rule alone, be allowed the set-off claimed.

Counsel for appellees insist, however, that independently of the statute appellees are entitled to an equitable set-off. Courts have long recognized "set-off as a natural equity." Before the statute of set-off, courts of chancery acted upon the doctrine of set-off as grounded upon the principles of natural equity. Barbour in the Law of Set-Off, page 190, says: "If a court finds a case of natural equity, not within the statute, it will permit an equitable set-off, if, from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by a cross-action," citing *Lindsay* v. *Jackson*, 2 Paige, 581; *Piggott* v. *Williams*, Mad. & Gel. 95. In Derby on Counter-

Claim, under the New York code, p. 74, it is stated that, "a defendant may have a right enforcible in equity, when the cross-demand is not due at the time of the assignment, and when it is against the assignee of an insolvent; though it might not have been pleadable at law" (citing *Church* v. *Isaacs*, 5 Paige, 592), and that technical objection that would be available at law will not defeat an equitable set-off. Bispham, in his Principles of Equity (4th ed.), section 27, says: "When there is anything peculiar in the case, so as to render it impossible for exact justice to be done by a court of law under the statutes, a court of chancery will afford relief through the medium of an equitable set-off." See 2 Story's Eq. Jur., section 1434. The doctrine of equitable set-off has been recognized in the following cases by the Supreme Court of our own State: *Keightley* v. *Walls*, 24 Ind. 205; *Keightley* v. *Walls*, 27 Ind. 385; *Cosgrove* v. *Cosby*, 86 Ind. 511; *Carter* v. *Compton*, 79 Ind. 37. In *Keightley* v. *Walls, supra*, the court treated set-off as an equity depending for its allowance on the insolvency of the assignor, and not technically on the statute. In *Sefton* v. *Hargett*, 113 Ind. 592, Mitchell, C. J., in speaking for the court, after referring to the general rule both at law and in equity, that only mutual demands existing in the same right are proper matters of set-off, says: "Exceptions to this general rule are made: (1) Whenever it becomes necessary to do complete equity, or to prevent irremedial injustice, as in cases of insolvency, or of just credit given on account of an individual indebtedness, or where the joint debt is a mere security for the separate debt of the principal; or, (2) whenever the action is upon a note or other contract against several defendants, any one of whom is principal and the others sureties thereon." In *Carter* v. *Campton, supra,* the court

cites approvingly from *Brewer* v. *Norcross*, 17 N. J. Eq. 219, using substantially the foregoing language. *Morrow's Assignee* v. *Bright*, 20 Mo. 299, was an action by the general assignee of an insolvent to recover a debt due the assignor. The defendant was allowed to set up as an equitable defense, as set-off, the amount of a note paid by him after the assignment, as security of the assignor upon a note which was under protest at the date of the assignment. Scott, J., in delivering the opinion of the court, said: "Bright could not sue Morrow to recover the money for which he was bound for him, until he had actually paid it. But this goes on a technical ground, peculiar to the action for money paid, laid out and expended. Money cannot be said to be laid out for another until money is actually paid on his account. But, in substantial justice, as Bright was Morrow's surety, and compellable by law to pay the debt, and as Morrow was insolvent, Bright may be regarded as the creditor of Morrow from the time the note was protested. Then, as there was an indebtedness on the part of Morrow to Bright, and as the very act of assignment was evidence of insolvency, by which Bright became absolutely bound, there was an equity against the demand of Morrow at the time of the assignment, growing out of his indebtedness to Bright."

The decision of the court in *Williams, Adm.*, v. *Helme*, 1 Dev. Eq. (N. Car.) 151, is thus stated in the syllabus: "A surety has, in respect of his liability, the rights of a creditor, and upon the insolvency of the principal debtor may retain any funds belonging to him in his hands. Therefore where the surety owed the principal debtor, who became insolvent, and assigned for value the debt due by the surety, it was held that the latter might retain the amount of his subsequent pay-

ment against the assignee." In *Krause* v. *Beitel*, 3 Rawle 203, Gibson, C. J., speaking for the court, said: "As regards cross-demands, the trustee of an insolvent estate, stands in a situation perhaps less, but certainly not more, favorable than that of any other assignee; his interest in the insolvent's debts being exactly that of the insolvent himself as it stood affected by countervailing equities at the time of the assignment. The creditors are not purchasers in the first instance, and the trustee takes for their benefit, consequently subject to all the rights which may grow out of the original transaction. It is immaterial, therefore, whether the liability set up as a defense were origina ly absolute or contingent, the relation of the parties being unalterable by the accidental insolvency of one of them. Here one of the defendants had actually paid a debt for the insolvent before his discharge, and was sued for another, which he has been compelled to pay since, and it conflicts with no provision of the legislature to allow the defendants the benefit of these payments, not perhaps as a set-off, but as a defense, that would be made available by a chancellor." In *Tuscumbia, etc., R. Co.* v. *Rhodes*, 8 Ala. 212, the facts were "that Rhodes, the complainant, became a subscriber with others, to the railroad company, for seventy-five shares of its stock, at one hundred dollars a share, which was to be paid for in accepted and indorsed bills of exchange, payable in five, eleven and seventeen months, interest included. The object of the subscription was to enable the company to raise funds for the payment of its debts. About the same time Sherrod made a loan to the company of fifty thousand dollars, for five years, to secure the payment of which, Rhodes and eleven others, executed a bond to Sherrod for that amount, payable also in five years;

the company, by an order on its minutes, pledging itself in its corporate capacity, for the payment of the debt. Subsequently, the company became insolvent, and being indebted to Sherrod in the sum of nearly two hundred thousand dollars, money paid by him for it, assigned to him some of its effects, and among other claims, the one against Rhodes for his subscription, which he had not complied with, by executing bills of exchange; together with other claims against him. Upon this demand against Rhodes, Sherrod brought suit in the name of the company, for his use, and subsequently Rhodes paid to Sherrod, upon the bond for fifty thousand dollars, twenty-six thousand dollars. A judgment was obtained by the company, for the use of Sherrod, against Rhodes, and he now seeks to set off in equity, the money thus paid against the judgment." And the court held that, as the company was insolvent at the time of the assignment to Sherrod of the debt of Rhodes, the latter could set off in equity the money he had paid for the company against the judgment obtained by Sherrod. In *Follett* v. *Buyer*, 4 Ohio 586,—a case involving the right of set-off,—Thurman, C. J., recognizes the doctrine of equitable set-off, using the following language: "I am aware that, by some highly respectable courts, an exception to this rule has been introduced, where the payee was insolvent when he made the assignment, and the maker was afterwards compelled to pay money for him on a contract of suretyship, entered into before the assignment took place; it being considered hard and inequitable that an insolvent payee should have the power, by an assignment made under such circumstances, to cast a loss upon his own surety.    *    *    *

"But these decisions rest, expressly, upon the ground of the assignor's insolvency; and consequently

where, as in this case before us, that element is wanting, there is no room for the exception to the general rule."

We think it fairly deducible from these decisions that insolvency is a distinct equitable ground of setoff, outside of the statute. It is in evidence that when appellants signed the note in favor of Jackson, as surety for Sulzer, the husband had in mind his indebtedness to Sulzer. He testified: That Sulzer promised him protection. "He would not see us suffer, but would protect us. That I was under obligations to him. That I owed him. I did owe him the note in suit, and $1,800 besides. I would not have signed the Jackson note had I not owed him." It is apparent, too, that Sulzer requested Clark to become surety on his note for the reason that he was his debtor. Sulzer is insolvent. Clark has already paid the debt owing by Sulzer to Jackson. He is without remedy, unless he is allowed the set-off claimed. The circumstances of the case, we think, entitle him to the benefit of the doctrine cited. The assignment in this case is for the benefit of only three of Sulzer's creditors. The assignment gave to the appellants only the rights that Sulzer had in the notes in suit. They were past due at the date of the assignment. They were charged with all outstanding equities against them. The evidence shows that at the time of the trial there was due appellants a balance of $11,000, and that they had in their hands property worth $18,950, with which to pay the same. From this it would appear that no harm could come to appellants by permitting appellees' set-off. It would be inequitable, under the circumstances, to permit them to collect money from Clark for Sulzer and not credit Clark what he paid out for Sulzer. In other words, it would be, in the language of Thurman, C. J., in *Fol-*

*lelt* v. *Buyer, supra,* "hard and inequitable that an insolvent payee should have the power, by an assignment made under such circumstances, to cast a loss upon his own surety."

Counsel for appellees further contend that as the Jackson note was commercial paper, Sulzer being insolvent at the time it was signed by Clark and Casper, it at once became the debt of the solvent sureties; that, the note being payable in a bank in this State, it was actual payment; so that Sulzer owed Clark one-half of the Jackson note ($1,250) the moment it was delivered to Jackson, November 12, 1894, upon the assignment to appellants, and at the same time Clark owed Sulzer the balance of the notes in suit. Counsel for appellees also claim that the judgment must be affirmed because the evidence is not in the record. The conclusion we have reached renders it unnecessary to consider either one of these claims. We find no error in the record. Judgment affirmed.