Breckenridge *et al. v.* McAfee.

--------◆--------

## BRECKENRIDGE ET AL. *v.* McAFEE.

PRACTICE.—*Supreme Court.*—*Assignment of Errors.*—The assignment as error of the action of the court below in the trial of a cause in excluding evidence offered, or in giving or refusing to give to the jury instructions asked, presents no question to the supreme court on appeal thereto : such action being only ground in support of a motion for a new trial.

PRINCIPAL AND AGENT.—*Declarations of Agent.*—*Evidence.*—*Sale of Goods by One Claiming to be the Owner's Agent.*—In an action to recover the possession of personal property, the defendant claimed title thereto by virtue of a purchase thereof from an alleged lawfully authorized agent of the plaintiff, but did not introduce nor offer to introduce any evidence to establish the alleged agency.

*Held,* that without such evidence or the offer thereof, the defendant could not introduce in evidence the declarations made to the defendant, at the time of such sale, in the plaintiff's absence, by such alleged agent, touching his authority to make such sale.

STOLEN GOODS.—*Sale by Thief.*—*Innocent Purchaser.*—*Action by Owner.*—By

a larceny of goods, the thief acquires no title thereto, and can confer none on a person to whom he sells the same. And such person is liable to the owner of such goods for their value, without regard to his innocence or good faith in making such purchase.

PRACTICE.—*Supreme Court.— Waiver.*—Where an assignment of error is passed by in silence in the brief of the party by whom it has been assigned, the supreme court will regard it as waived.

From the Tippecanoe Circuit Court.

*T. B. Ward* and *R. Jones*, for appellants.

*D. Wallace* and *A. Rice*, for appellee.

HOWK, J.—In this action, appellee was plaintiff, and appellants were the defendants, in the court below.

Appellee's complaint was in two paragraphs. In the first paragraph, it was alleged, in substance, that on or about the 10th day of February, 1874, while the appellee, who was a farmer and resided on his farm in Tippecanoe county, Indiana, was temporarily absent from his home, on business in a distant state, one James Peebles, who was then employed by appellee as a laborer on his said farm, and who, as such laborer, was living thereon with the family of appellee, during the latter's absence, unlawfully, wrongfully and without any authority from appellee, and without his knowledge or consent, fraudulently and feloniously took and carried away, from appellee's barn upon his said farm, three hundred and seventy-three bushels and forty-eight pounds of good, merchantable wheat, belonging to appellee, of the value of one dollar and fifty cents per bushel, and transported the same to the city of Lafayette, in said county, where he pretended to sell and did in fact deliver the same to appellants, who paid him therefor the sum of four hundred and eighty-six dollars, or one dollar and thirty cents per bushel, after which said James Peebles absconded to parts unknown, carrying with him the money so received from appellants. And appellee averred, that immediately upon his return home, and upon learning of said occurrence, he called upon appellants and informed them of

Breckenridge *et al. v.* McAfee.

said facts and demanded the return of his said wheat, or, if that was impossible, that appellants should pay him the value thereof in money, both and each of which they refused to do, to appellee's damage in the sum of six hundred dollars. Prayer for judgment for the possession and return of said wheat, or for six hundred dollars, the value thereof, and other proper relief.

In the second paragraph of his complaint, appellee alleged, in substance, that on or about the 10th day of February, 1874, appellants, without appellee's knowledge or consent, converted to their own use three hundred and seventy-four bushels of wheat, of the value of six hundred dollars, belonging to appellee, to his damage six hundred dollars, for which appellee demanded judgment and other proper relief.

Appellants answered the complaint, by a general denial of each and every allegation therein.

There was a trial by jury, in the court below, and a verdict rendered in favor of appellee, assessing his damages at four hundred and eighty-five dollars and ninety-two cents. Appellants then moved the court for a new trial, which motion was overruled, and to this decision appellants excepted, and judgment was rendered upon the verdict.

In this court the appellants have assigned the following errors:

1. Overruling appellants' motion for a new trial;

2. Error in the instructions given to the jury;

3. Error in refusing to give instructions, asked for by appellants, to the jury; and,

4. Error in refusing to allow evidence offered by appellants.

The last three of these alleged errors, as here presented, are not available to appellants, and present no question for our consideration. Each of them states matter which is good cause for a new trial, if made sufficiently specific, and presented to the court below in a motion for such

new trial. And then, the only proper error to assign in this court would be the overruling of such motion for a new trial.

In our examination and decision of this cause, therefore, we shall consider only such questions as are fairly presented by the first error assigned. In appellants' motion for a new trial, in the court below, three causes were assigned for such new trial, as follows:

1. Error of the court, in sustaining an objection to evidence offered by appellants, and in refusing to admit such evidence;

2. The court misdirected the jury as to the law applicable to the facts; and,

3. Error of the court, in its refusal to instruct the jury as requested by the appellants.

These causes for a new trial, we will consider in their enumerated order; and first, therefore, we will notice the refusal of the court below to admit certain evidence, offered by the appellants. It appears from the bill of exceptions, which is properly in the record, that at the proper time the appellants offered to prove by the appellant Jenkins, what Peebles said, at the time the wheat was delivered to appellants, about its ownership, and that the wheat was represented by him to be the wheat of the appellee, and that he, Peebles, was selling it as the appellee's agent. Appellee objected to the evidence offered, and the court below sustained the objection and refused to permit such proof to be made, and to this decision, appellants excepted. In our opinion, there was no error in the refusal of the court to admit the offered evidence. The statements of Peebles in relation to the ownership of the wheat or to his sale of it as appellee's agent, made in the absence of the appellee, could not be evidence against the appellee, until it was shown by satisfactory proof, or was accompanied by an offer to prove, either that he was the general agent of the appellee, or that he was appellee's agent in this particular transaction. There

was not only no such proof, on either point, before the court and jury, but the contrary had been shown by strong and convincing testimony. The offered evidence was properly excluded.

2. The second cause assigned in the motion for a new trial was, that the court below misdirected the jury as to the law applicable to the facts. This was intended, no doubt, by appellants' counsel, as a specification under the eighth statutory cause for a new trial, to wit: "Error of law occurring at the trial and excepted to by the party making the application * * *." 2 R. S. 1876, p. 182, sec. 352, 8th clause. But it is certainly a very loose, inaccurate and objectionable mode of assigning a cause for a new trial. As stated in appellants' motion, we very much doubt whether the court below or this court, under our code of practice, ought to consider it as any sufficient cause for a new trial. In this case, however, disclaiming all intention of thereby establishing a precedent, we have concluded to overlook our objections to the form of stating this cause for a new trial, and to consider the questions thereby presented, or intended to be presented, as if the cause had been assigned in strict compliance with the requirements of law.

The objection of appellants was to the entire charge of the court below to the jury trying the cause. It does not appear from the record, that the court had been required by either party to give written instructions to the jury, or that any such instructions were signed by the judge of the court below. It does appear, however, from a bill of exceptions, which is properly in the record, that after the evidence had been heard, the court instructed the jury in writing, and these written instructions, though not signed by the judge, are set out in full, we suppose, in the bill of exceptions, although there is nothing in the bill to indicate, with certainty, that it does contain all the instructions of the court to the jury. It appears from

the bill of exceptions, that the court below instructed the jury, as follows:

"1.  The question of law on which this case turns is, whether Peebles, in taking the wheat, under the facts and circumstances, was or was not guilty of a larceny. If he was guilty of a larceny, then the plaintiff, if he has otherwise made out his case, is entitled to recover; and if Peebles was not guilty of a larceny, then the plaintiff can not recover in this action.

".2.  Larceny is defined to be the felonious taking and carrying away the personal property of another.  By felonious taking is meant the taking with the intent to appropriate the thing taken to the use of the person taking it, or with the intent to wholly deprive the owner of the thing taken.

"3.  To constitute larceny, there must be a trespass and a specific intention to steal, and these must concur in point of time; that is, the trespass, or asportation by trespass, must be simultaneous with the intent to steal.

"4.  If, in this case, the plaintiff, McAfee, authorized and directed Peebles to take the wheat to market, or to store it, and Peebles did so, pursuant to directions, and afterwards converted the money which he got for the wheat to his own use, this would not be larceny.

"5.  Or, if Mrs. McAfee, whether she was thereunto authorized by her husband or not, authorized and directed Peebles to market or store the wheat, and, pursuant to her directions, he did so, and afterwards he converted the money he got for the wheat to his own use, this would not be larceny.

"6.  If the jury find from the evidence that the plaintiff was the owner of the wheat in controversy, which had been threshed and stored in bins on his farm,—that he left home to be absent two or three weeks,—and that, after he left, Peebles, who was in his employ as a farmhand, falsely and fraudulently told the wife of the plaintiff, that said plaintiff had ordered him, said Peebles, to

take the wheat to Lafayette, and by such false and fraudulent statements, procured the assent of plaintiff's wife to his doing so, and with her consent, so procured, and with the intent on his part, at the time of making such false and fraudulent representations and of removing said wheat, to convert the same to his own use, he did, with the assistance of other employes and with the teams of the plaintiff, haul said wheat to Lafayette and there sell the same, receive the price therefor, and abscond with such proceeds, then he was guilty of a larceny of the wheat, though the defendants, in good faith and without any fault or negligence, purchased said wheat from the wagons and paid for it, in their ordinary way of purchasing wheat, and they acquired no right to it, and if they refused to deliver the wheat or its value, on proper demand, they are liable to the plaintiff for the value of the wheat.

"7. When one delivers an article to another, and at the same time intends to part with the property in the thing delivered, then, no matter by what fraud or trick the article is obtained, there is no larceny, and the possessor can confer a good title on an innocent purchaser.

"8. But the jury, to find for the plaintiff, must be satisfied beyond a reasonable doubt, from the evidence, that Peebles was guilty of a larceny of the wheat."

To the giving of each of which instructions, it appears that the appellants at the proper time excepted.

The argument of appellants' learned counsel, in support of their objections to the instructions of the court below, is certainly ingenious, if not satisfactory or conclusive. They attempt to make a distinction, where the difference is not apparent, between larceny at common law, and modern larceny, under modern decisions of English and American courts, as to the relative rights of the owner, and innocent purchaser, of stolen property. They found their argument upon this proposition: "It was a rule of the common law, that where a party pos-

sessed himself of property by means of a felony, he thereby acquired no title, and could confer none on his vendee." And they assert, that this "rule as to felonies, was only the application of a more general rule of the common law," which latter rule, they say, was and is still, "that one, who has procured the possession of personal property by trespass, (that is, without the assent of the owner,) can not give any title to it to a purchaser,—and that the trespass must be actual, not constructive." It is 'then said, that "there could, at common law, be no larceny where the owner had voluntarily parted with the possession of his property; an actual trespass was a necessary ingredient of the crime." And it is further said, that "in quite modern days, the English courts and those of most of our states have held that there may be a larceny, where there is not an actual trespass, as where the owner has been induced to part with the possession of his property by a trick," etc.

Appellants admit, as we understand their argument, that in the taking and sale of appellee's wheat, and the conversion of the proceeds, in the manner and under the circumstances shown in this case, Peebles was guilty of a larceny of the wheat, as larceny is defined in the modern English and most of the American authorities; but they assert that he was not guilty of a larceny of appellee's wheat, as larceny was defined at the common law. Appellants also admit, that where a party possessed himself of property, by means of a larceny at common law, he thereby acquired no title and could confer none on his vendee. Now, while it is true, as appellants admit, that Peebles possessed himself of appellee's wheat by means of a larceny thereof, as larceny is defined in the modern English and American authorities, it would hardly be claimed that he thereby acquired any title to the wheat; but it is claimed, as we understand appellants' position, that they, as Peebles' vendees, acquired a title to the wheat superior to the title of the appellee, the owner

thereof. Appellants have failed to fortify this position by any authorities, and we are not inclined to adopt it.

In our opinion, a thief can not acquire any title to stolen property, by means of a larceny thereof, and can confer no title thereto on his vendees; and this is so, whether the larceny thereof is a larceny at common law, or a larceny thereof as larceny is defined in the modern English and American authorities. In this case, the larceny of the wheat by Peebles being admitted, the appellants, as his vendees, were liable to appellee, as the owner of the wheat, for its value, without regard to their innocence or good faith in their purchase thereof from Peebles. *Robinson* v. *Skipworth*, 23 Ind. 311.

We find no error in the instructions of the court below to the jury, of which the appellants, in our opinion, can rightfully complain. The case seems to have been fully and fairly tried, and the law, applicable to the facts of the case as shown by the evidence, was stated in the instructions of the court to the jury, more strongly and favorably for appellants, than the law, perhaps, would warrant.

The third cause assigned in the motion for a new trial was that the court below erred, in its refusal to instruct the jury as requested by the appellants.

Upon the questions raised by this alleged error, the able brief of appellants' counsel in this cause is entirely silent. We regard this as a waiver by appellants of the alleged error, and therefore we neither consider nor decide, whether the court below was right or wrong, in its refusal to instruct the jury as requested by the appellants.

The judgment of the court below is affirmed, at the costs of the appellants.