St. L., I. M. & S. R'y Co. v. Rosenberry.

---

### St. L., I. M. and S. R'y Co. v. Rosenberry.

1. **Railroads:** *Negligence of passenger leaving moving train.*
Where the risk or danger of alighting from a moving train is not apparent to a passenger, and he is urged to take the hazard by the company's employes, whose duty it is to know the danger, and he does so, he is not chargeable with negligence. When the danger is obvious, but slight, he has the right to rely upon the judgment of the conductor, whose duty and experience he may presume gives him a superior knowledge in such matters.

2. **Same:** *Leaving moving train under threats of ejection.*
Where a passenger leaps from a moving train under the belief, justified by the conduct of the conductor, that he would be ejected if he did not go voluntarily or without force, he is blameless. The company being the author of the original peril, would be liable for the consequences. But if he has no cause for such belief he is guilty of negligence.

3. **Instructions:** *Not to be based on assumed facts.*
It is error for the court to assume facts in an instruction not authorized by the evidence.

4. **Railroads:** *Negligence: Conductor refusing to stop at forbidden stations.*
It is not negligence for the conductor to refuse to stop his train at a station forbidden by the regulations of the road, to land a passenger who has embarked

St. L., I. M. & S. R'y Co. v. Rosenberry.

on the train, without attempting to learn whether it would stop there, though the conductor has taken up his ticket.

5. SAME: *Evidence of rules for running trains.*

In an action for damages resulting to a passenger from the refusal of the conductor to stop his train at the passenger's station, evidence for the company, not only that the train was a through freight train, but also that it was not running on schedule time but on telegraphic orders, and that the station was not a telegraph station, is admissible.

APPEAL from *Nevada* Circuit Court.

Hon. G. M. BARKER, Special Judge.

STATEMENT.

The appellee embarked at Prescott on a through freight train of the appellant, for Emmett, a station on appellant's road, eight miles distant, without any attempt to learn that the train would stop there. Soon after leaving Prescott the conductor took up his ticket, and informed him and other passengers for Emmett, that the train would not stop there, and appeared enraged at their getting on the train, instead of waiting for the passenger train. Upon approaching Emmett he directed them to get ready to get off, and on reaching there, without slackening his speed, ordered them in a rude and offensive manner to jump off. Soon afterwards, while the conductor was at the rear of the caboose, the appellee jumped from the front platform and was injured, and sued the appellant for the injury. The conductor's manner and language were coarse and offensive from the time he took up the tickets and learned their destination. The train was running at the rate of ten or twelve miles an hour when the appellee jumped off.

*Dodge & Johnson* for Appellant.

There are three patent facts apparent from the evidence:

1. The train passed Emmett without slacking its speed, and was running at the rate of ten or twelve miles an hour.

2. The conductor gave no orders, used no threats or compulsion on plaintiff, to risk his life by jumping from the train.

3. The jumping was wholly voluntary on the part of plaintiff, rather than be carried past his station; and thus, by his own wilful and voluntary act, he assumed the risk of the leap, and all risks liable to occur while the train was running at an *obviously* dangerous rate of speed.

I. It may have been ever so negligent in the conductor to refuse to slow up or stop at Emmett, but the accident did not occur by means of his negligence. The *proximate cause* of the *injury* was the voluntary act of plaintiff in jumping from the train. The only thing that can take this case out of the rule that contributory negligence is a bar to the action is, that either the conductor commanded and ordered plaintiff to jump off, or that his acts were such as to lead plaintiff to believe that it was safer to jump than to remain on the train. But if the conductor did tell him to jump, and the train was running at an obviously dangerous rate of speed, he was not compelled to do so. Where one is ordered to do an act, which it is apparent is dangerous, and he does it and is injured, the fact that another ordered it or advised it, without using any compelling force, compulsion or threats, will not justify the injured party, and he cannot throw the blame upon another.

When a passenger jumps from a car while in rapid motion, or leaves it under circumstances which would necessarily or probably render such act perilous, he cannot recover, even though the carrier be guilty of negligence; or even if advised or ordered to do so, unless threats or compulsion be used. *Shear. & Red. on Neg., Sec. 283; Thompson on Car. of Pass., p. 267; 23 Pa. St., 147; R. R. v. Hendricks, 26 Ind., 232; 9 La., 441; 59 Mo., 37; 68 Id., 593; 30 Oh. St., 223; 116 Mass., 269; 49 N. Y., 177; 3 A. & E. R'y Cas., 429; 37 Ark., 520; 56 N. Y., 302.* If a passenger leap from a car on the sugges-

St. L., I. M. & S. R'y Co. v. Rosenberry.

tion of the conductor, when the latter only gave his opinion that the passenger might do so in safety, and when the danger was so apparent that a prudent man, similarly situated, would not have made the attempt, the negligence of the passenger is such as to preclude recovery. *53 Ill., 510; 26 Id., 373; R. R. v. Morris, Va. Sup. Ct., Nov. 1878; 66 N. C., 794; R. R. v. Powell, 40 Ind., 37; 7 Allen. 207; 14 Id., 429.*

II. The verdict was excessive; the facts did not justify punitive damages, and the court erred in so instructing the jury. *1 Sult. Dam., p. 720; Ib., 724, and cases; 1 Otto, 489; 21 How., 213; 2 Wall., Jr., 164; 28 Ark., 448; 35 Iowa, 306; 29 Mich., 202.*

III. It was error to refuse to allow defendant to prove its rules and regulations as regards the running of trains, and in reference to carrying passengers on freight trains. *Thomp. on Car. Pass., 335–343; 1 A. & E. R'y Cases, 255 and note; 3 Id., 467; 53 Ill., 510; 49 Tex., 35; 40 Ark., 321.* It is the duty of a passenger to ascertain what train will stop at his destination. *50 Ind., 141; 4 Laus. N. Y., 147; 24 N. Y., 599.* Even though, in such a case, the conductor takes the ticket and agrees to let the passenger off at his destination, this will not bind the company. *The duty of the conductor is to run the train according to the public arrangements, and he has no power to change these. 60 Ind., 12; 53 Ill., 510.* See also *3 A. & E. R'y Cases, 340; 12 Id., 141; 78 Mo., 610.* The act of the conductor in receiving the passenger's ticket in such case does not bind him to stop at the place indicated on the ticket. *60 Ind., 12; 53 Id., 510.*

IV. The instructions for appellee were erroneous. The first was argumentative, is not confined to matters of law, and gives undue prominence to certain portions of the evidence while it entirely ignores others. It *assumed* certain facts to be true which should have been left to the jury to find; was a *summing up* for the plaintiff. See *87 Ill., 547; 86 Id., 62; 59*

*Ind., 105; 80 Ill., 51; 43 Md., 70; 81 Ill., 478; 33 Mich., 143; 57 Mo., 138; 90 Ill., 612; Ib., 430; 83 Id., 150; 41 Iowa, 353; 21 Minn., 442; Const. Ark., 1874, Art. 7, Sec. 23; 14 Ark., 295; Ib., 537; 16 Id., 593; 18 Id., 526-7; 24 Id., 543; 36 Id., 454; 35 Id., 155.*

An instruction should not be given that intimates to the jury the opinion of the court as to the weight of the evidence. *34 Ark., 702; 43 Id., 295.* See also *2 Am. & E. R'y Cases, pp. 260-2.*

COCKRILL, C. J.   There was no dispute about the cause of the injury in this case.   The appellee jumped from a running train, which, according to the testimony of most of the witnesses, was under full headway at the time, and by his own statement was moving at the rate of ten or twelve miles an hour.   The appellee's conduct in leaping from the train was the proximate cause of the injury of which he complains, and the question with the court and jury on the trial, was, whether his action was justifiable or negligent.

The court at the instance of the appellee gave a long and somewhat complicated instruction to the jury, from which we infer that it was intended to charge that it was negligence on the part of the company, to refuse to stop its train at the station of his destination, in order to allow appellee to alight, and that this, coupled with the fact (if they should find it to be a fact) that he acted in obedience to the directions of the conductor in leaping from the train, would justify the act; and also, in the same instruction, that the leap was justifiable if the appellant so leaped under the reasonable apprehension that the conductor would eject him from the moving train unless he left it voluntarily.

The first theory does not embody the law applicable to this case, and the bill of exceptions does not disclose the evidence upon which the second could be based.

St. L., I. M. & S. R'y Co. v. Rosenberry.

Where the risk or danger of alighting from a moving train is not apparent to the passenger, and he is urged to take the hazard by the company's employes, whose duty it is to know the danger, and does so, his conduct will not be regarded as negligent. Where the danger is obvious, but slight, he has the right to rely upon the judgment of the conductor, whose duty and experience he may presume give a superior knowledge of such matters, and so justify an act which would otherwise be negligent. The cases of *St. Louis, Iron Mountain & Southern Railroad v. Cantrell, 37 Ark., 419*, and *Memphis & Little Rock Railroad v. Stringfellow, 44 Ib., 322*, are illustrations of this in our own reports.

*Filer v. N. Y. Cent. R. R., 49 N. Y., 47*, was a case of a passenger attempting to alight, while the train was in motion, in obedience to the directions of a brakeman. In disposing of the case, the court say: "That it was culpable negligence on the part of the defendant to induce or permit the plaintiff to leave the train while in motion, and a gross disregard of duty not to stop the train entirely, and give her ample time to pass off with her baggage, is not disputed. Notwithstanding this, if the plaintiff did not exercise ordinary care, and might with ordinary care and prudence have avoided the injury, she is precluded from recovery."

In *Lambeth v. Railroad, 66 N. C., 494*: "If the motion of the train was so slow that the danger of jumping off would not be apparent to a reasonable person, and the intestate acted under the instructions of the manager of the train, then the resulting injury was not caused by contributory negligence or a want of ordinary care."

Ordinary care, in this case, was defined to be that degree of care which may have been reasonably expected from a sensible person in the passenger's situation. A passenger cannot throw the responsibility of his own wanton and unreasonable acts

*(margin note:)* 1. RAILROADS: Negligence of passenger in leaving moving train.

upon the company, merely because a conductor has directed it. "One who inflicts a wound on his own body must abide the suffering and the loss, whether he does it in or out of a railroad car." *Black C. J.* in *Railroad v. Aspell, 23 Penn. St., 147.* "If while a train is at full speed, the conductor should direct a passenger to jump out at a point extremely hazardous, it would hardly excuse the passenger from the legal consequences of contributory negligence if he acted voluntarily." *Railway v. Krouse, 30 Ohio St., 222.*

"Had the cars been going at a rapid rate, the plaintiff must have known that she would be injured by leaping from them, and the attempt to leave the cars under such circumstances, even at the instance of the railway servants, would have been a wanton and reckless act, and no recovery could have been had against the defendant." *Filer v. Railroad, 49 N. Y., sup.*

The appellee was not an infant or *non compos.* He was not put to a sudden election in an emergency to choose between the least of two impending evils. He had been informed by the conductor, soon after entering the train, that it was a through freight and that the station of his destination was not one of its stopping points. Just before reaching the station he was told the train would not stop. No check, he himself testifies, was made in the speed of the train, but he chose his ground when the station was passed, and leaped. It was a rash and reckless exposure of the person to peril, and the command of the company's agent did not justify it. As was said in *Railroad v. Jones, 95 U. S., 439:* "As well might he have obeyed the suggestion to put himself on the track before the advancing wheels of the locomotive."

2. SAME:— Leaving train under threats of eviction.

To be forcibly ejected from a moving train would, obviously, be attended with more danger than to leap from it, and if the appellee had been justified in the belief that he would be ejected if he did not go voluntarily or without force, no blame

St. L., I. M. & S. R'y Co. v. Rosenberry.

could be attached to his conduct. In such case the railroad, being the author of the original peril, would be answerable for the consequences. *Railroad v. Aspell, sup; Nelson v. A. & P. Railroad, 68 Mo., 593; Stokes v. Sattonstall, 13 Pet., 181.*

It was upon this theory that the court instructed the jury at appellee's instance, and upon its own motion they were told, that unless the appellee was "induced to jump from the train by reason of the orders, threats, show of force, language and manner of the conductor," and that these were of such a nature as to cause a reasonable man to believe that if he remained on the train he would receive bodily harm or be forcibly ejected from the moving train. The latter instruction is open to the objection that it assumes as a fact that there were threats of violence and a show of using force by the conductor. It invades the province of the jury. *Floyd v. Ricks, 14 Ark., 295; St. Bank v. McGuire, Ib., 537; Montgomery v. Erwin, 24 Ib., 543; Randolph v. McCain, 34 Ib., 702.*

3. INSTRUC-TIONS: Not to be based on assumed facts.

But the evidence would not warrant the jury iu finding that there were threats of violence or a show of force, and there is nothing disclosed in the record from which it could reasonably be inferred that the appellee would have suffered any bodily harm by remaining upon the train. These instructions would lead the jury to infer that the evidence tended to establish the facts hypothetically stated in the first, and assumed to exist in the other, and ought not to have been given. *L. R. & Ft. Smith R'y v. Trotter, 37 Ark., 593; Lawrence Co. v. Coffman, 36 Ib., 641.*

The appellee had not been directed or induced by any of the company's employes to enter the train. He had made no effort to ascertain whether it would stop at his destination or not. It was his duty to do this. There were other trains going to his destination on the same day, and his mistake in taking a through train cast no obligation on the company to stop its

4. NEGLI-GENCE: Conductor refusing to stop at forbidden station is not.

train at a point the regulations of the road forbade, and the bare refusal of the conductor to do so was no direliction of his duty and was not negligence to be visited on the company. *R. R. v. Nuzum, 54 Ind., 141; R. R. v. Hatton, 60 Ind., 12; Fink v. R. R., 4 Laus. N. Y., 147; L. R. & Ft. Smith R'y v. Miles, 40 Ark., 321, and cases cited; Marshall v. R. R., 78 Mo., 610.*

5. EVIDENCE: Of rules for running trains.

The company offered to prove on the trial that the train in question was not only a through freight, not stopping at the appellee's station, but also that it was not running on schedule time, but by telegraphic orders, and that the appellee's station was not a telegraphic station. All of this was competent evidence, and should have been admitted. It was material to ascertain whose was the first fault, appellant's or appellee's, and if the appellant's, then whether it would excuse the appellee's. If the appellee, through his own neglect, had embarked on a mere wild train which the conductor could not delay without the danger of throwing the passenger and freight travel of the road into confusion, it was his duty to refuse to stop merely for a passenger's accommodation. The fact that he took the appellee's ticket could not alter the rule under such circumstances. *R. R. v. Hatton, 60 Ind., sup; R. R. v. Randolph, 53 Ill., 510,* and authorities cited *sup.*

That the conductor's conduct was rude and that he grossly violated the duty the carrier owes to its passengers, the jury were fully justified in believing, and their just indignation at his conduct is evidenced in the round verdict they returned against the appellant; but the appellee's suit is for a personal injury, which, as we have seen, was the resnlt of his own misconduct, and not the consequence of the conductor's acts.

For the errors indicated, the judgment will be reversed, and the case remanded for a new trial.