Alexander *et al. v.* Swackhamer.

No. 11,978.

ALEXANDER ET AL. *v.* SWACKHAMER.

CONVERSION.—*Innocent Purchaser of Personal Property from Fraudulent Possessor.—Liability to Owner.*—Where one falsely and fraudulently represents himself to the owner of personal property to be a member of a responsible firm of commission men, and by a forged check of such firm in pretended payment obtains from the owner, who believes he is dealing with such firm, the possession of the property, and the same is shipped by the impostor to such firm, and by them sold for him in good faith to an innocent dealer, who in turn disposes of it on his own account, the latter, in the absence of negligence on the part of the owner, is liable to him for the value of such property as for a conversion.

SAME.—*Sale.—Delivery.—Title.—Apparent Authority to Sell.*—Under such circumstances there is no sale to the impostor and no title passes, and a delivery by the owner under the erroneous supposition that a sale has been made, neither invests the person to whom the delivery is made with title, nor with an apparent authority to sell the property.

From the Marion Superior Court.

*F. Winter* and *J. A. Holman,* for appellants.

*J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellee.

MITCHELL, J.—There is no dispute concerning the facts which gave rise to this suit. The question is upon which of two innocent persons the law will cast the loss occasioned by the operations of one who, by the successful execution of a fraudulent scheme, obtained wrongful possession of property, which was afterwards sold by commission men, to whom it was delivered for sale by the person who was fraudulently in possession of it.

On the 12th day of November, 1883, Swackhamer, a farmer residing in Clinton county, in this State, was the owner of forty head of cattle. A man, calling himself Johnson, and representing that he was a member of the firm of Fort, Johnson & Co., who were general commission salesmen of live-stock at Indianapolis, called at Swackhamer's farm and proposed to purchase his cattle for the firm of

VOL. 105.—6

which he represented himself to be a member. After looking at the cattle, and agreeing on the price, the owner of the animals was informed by the pretended Johnson that he carried no money with him, and that he would be obliged to deliver the check of his firm on their bankers at Indianapolis, in payment for the cattle. This arrangement was not at once entirely satisfactory to the seller. After some suggestions as to the manner in which he might assure himself of payment, it was agreed that Swackhamer should telegraph the banking house of S. A. Fletcher & Co., at Indianapolis, to ascertain the responsibility of the firm of Fort, Johnson & Co., and that the cattle should remain his property until paid for. The pretended Johnson remained over night with the farmer, who in the meantime dispatched an inquiry to the bankers referred to, concerning the standing and credit of Fort, Johnson & Co. Receiving a satisfactory answer he accepted a check, signed Fort, Johnson & Co., for the agreed value of the cattle, and turned them over to the purchaser, who said : "If this check is not promptly paid, these cattle are yours until you get your money." The cattle were driven to a railway station near by, and in the presence of Swackhamer a bill of lading was delivered to Johnson, billing the cattle to Fort, Johnson & Co., in care of J. Zeigler. The cattle were shipped directly to Indianapolis, and were received at the stock-yards by the consignees. Swackhamer placed the check in the Farmers Bank at Frankfort for collection. Two days afterwards he was informed it was a forgery and had been returned unpaid. In the meantime the pretended Johnson had presented himself to Fort, Johnson & Co., under the assumed name of John Zeigler, and had procured them to sell the cattle on commission to the appellants, Alexander & Co. These gentlemen were cattle dealers, engaged in buying stock for eastern markets. They paid full value for the cattle, without notice of Swackhamer's claim, and believed Fort, Johnson & Co. were authorized to sell them as commission men. The cattle were immediately shipped east and

sold by Alexander & Co. Both Fort, Johnson & Co. and the appellants acted in entire good faith, and their relation to the whole transaction was according to the usual course of business. It turned out that the real name of the alleged Johnson was Kennedy, that he had no relation to or connection whatever with Fort, Johnson & Co., who had never seen him but once before, when he came into their office and inquired about the price of cattle, and remarked that he had a lot to dispose of in the country.

Swackhamer brought this suit against Alexander & Co. to recover the value of the cattle as having been converted by them. The plaintiff had a verdict for $1,845, for which sum a judgment was rendered after a motion for a new trial was overruled.

The questions presented for decision arise upon instructions given by the court, and upon an instruction prayed by the defendant and refused.

The court instructed the jury, in substance, that if Swackhamer at the time of the transaction was, by the fraudulent practices employed by the person with whom he dealt, induced to believe that he was contracting with Fort, Johnson & Co., through one of the members of that firm, and that he was selling and delivering his cattle to that firm, when in truth he was not dealing with the firm, or with a person authorized to deal on its behalf, then the contract was wholly void, and the title and ownership of the cattle did not pass, even though the cattle were delivered into the possession of the person who falsely personated a member of the firm, and that, under such circumstances, the defendants, although purchasers in good faith, took no title to the property, and would be liable to the plaintiff.

The court further instructed the jury, substantially, that if the sale was made under the false representation that the person to whom it was made was a member of the firm of Fort, Johnson & Co., and that he made the purchase for them upon condition that the title to the cattle was to remain in the

plaintiff until the check delivered to him in payment was paid, then, even though the cattle were delivered to the supposed member of the firm, the title and ownership remained in the plaintiff, and the defendants, although purchasers in good faith, without knowledge of the condition, would be liable for the value of the cattle.

The defendant asked the court to instruct, in substance, that if Fort, Johnson & Co. were known by the defendants to be commission men, at the time they purchased the cattle from them, engaged in the sale of live-stock, and had the actual possession of the cattle in controversy, and assumed to sell them as commission men, then it was not necessary, in order to defeat the plaintiff's right, that he should have authorized Fort, Johnson & Co. to sell the cattle, or that he should have delivered them into the possession of that firm with the intention that they should sell them, but if he delivered the cattle to a person with knowledge that such person intended to consign them to Fort, Johnson & Co., and with knowledge that Fort, Johnson & Co. were commission men, engaged in the sale of cattle consigned to them, expecting at the time that he permitted them to be taken and consigned, that they would be sold by Fort, Johnson & Co., in the ordinary course of their business, and that they were so sold, then he must be deemed to have conferred such apparent authority upon the commission men to sell the cattle, as authorized them to pass the title to purchasers in good faith, even though the sale was upon the condition that the ownership should remain in the plaintiff until the cattle were paid for.

As relevant to the instructions given by the court, it may be said concerning the one first above summarized, it proceeds upon the theory that in every contract of sale an essential requisite to its validity is that there shall be two contracting parties.

The possession of property may be obtained from the owner by means of fraudulent devices, but it does not necessarily

follow that the person to whom property is delivered in pur-
suance of such devices, thereby becomes a purchaser, or that
a sale, even though one was intended, has resulted from the
transaction. If there was in fact no purchaser, there was no
*de facto* sale. No contract resulted which required avoid-
ance. The transaction was void.

Whenever property is obtained from the owner by fraud,
it is therefore important to determine whether the facts show
a sale to the party guilty of the fraud or a mere delivery of
it into his possession as a result of the fraudulent devices
practiced.

If the owner of goods is induced by fraudulent represen-
tations to deliver them to an irresponsible purchaser, in pur-
suance of a contract of sale to him, and such purchaser, while
in possession, transfers them for a valuable consideration to a
third person, who acts in good faith, without notice of the
fraud, the title of the good-faith purchaser will prevail over
that of the first owner. *Curme, Dunn & Co.* v. *Rauh*, 100
Ind. 247 ; *Parrish* v. *Thurston*, 87 Ind. 437.

In the case before us, both upon the facts assumed in the
instruction, and as they appear in the evidence, there was no
contract of sale to the spurious representative of the firm, one
of whose members he falsely personated. He did not pro-
pose to buy on his own account, nor did the plaintiff con-
template a sale to him.

The plaintiff contracted upon the supposition that he was
selling to Fort, Johnson & Co., through the agency of a mem-
ber of that firm. He did not agree to sell, or contemplate a
sale, to any other person, nor did the person with whom he
negotiated propose to purchase for himself or any other than
Fort, Johnson & Co. The transaction resulted in a misad-
venture. No sale was made to Fort, Johnson & Co., and as
no other was proposed or contemplated, none was made. In
the language of the instruction given, the contract was
*wholly void*. By means of a trick, the naked possession
of his property had been procured from the plaintiff, while

the title and ownership remained in him, after the delivery the same as before.

No one can transfer a greater right or better title to property than he possesses himself. It follows necessarily, when Fort, Johnson & Co. sold the cattle to Alexander & Co., at the request and for the benefit of the fraudulent possessor, they sold no better or greater right than he had. When, therefore, Alexander & Co. sold the cattle, they sold property to which the plaintiff had a perfect title, and when they received the proceeds of such sale they received money which belonged to the plaintiff. This amounted to a conversion of the plaintiff's property, for which they were liable. *Hamet* v. *Letcher,* 37 Ohio St. 356 (41 Am. R. 519); *Barker* v. *Dinsmore,* 72 Pa. St. 427 (13 Am. R. 697); *Moody* v. *Blake,* 117 Mass. 23 (19 Am. R. 394); *Cundy* v. *Lindsay,* L. R. 3 App. Cas. 459.

In *McCombie* v. *Davies,* 6 East, 538, Lord ELLENBOROUGH said: "According to Lord HOLT, in *Baldwin* v. *Cole,* 6 Mod. 212, the very assuming to one's self the property and right of disposing of another man's goods, is a conversion; and certainly a man is guilty of conversion who takes my property by assignment from another who has no authority to dispose of it." So, in *Hyde* v. *Noble,* 13 N. H. 494, it was held that one who claimed a right to property under a purchase from a person who had no title or power to sell, was liable for a conversion.

The cattle were the property of the plaintiff, and their appropriation by Alexander & Co. was without authority. The unauthorized appropriation of another's property is, as a rule, sufficient to enable the owner to maintain an action for its conversion. A purchaser without notice from one who has no title and no right or apparent authority to transfer the property, will not be a defence.

In *Hills* v. *Snell,* 104 Mass. 173 (6 Am. R. 216), it was said: "Even an auctioneer or broker, who sells property for one who has no title, and pays over to his principal the pro-

·ceeds, with no knowledge of the defect of title or want of authority, is held to be liable for its conversion to the real ·owner." *Shearer* v. *Evans,* 89 Ind. 400; *Breckenridge* v. *McAfee,* 54 Ind. 141; *Curme, Dunn & Co.* v. *Rauh, supra; Stanley* v. *Gaylord,* 1 Cush. 537; *Gilmore* v. *Newton,* 9 Allen, 171; *Grunson* v. *State,* 89 Ind. 533 (46 Am. R. 178).

As upon the facts assumed there was no sale either absolute or conditional, so much of the second instruction given by the court as referred to a conditional sale was probably not entirely accurate.

The jury were correctly told in the first instruction referred to, that if certain facts and representations were proved, the pretended sale was wholly void. In the second, the same facts, substantially, were assumed, and to the facts assumed was added the further proposition, that if the sale was upon ·condition that the title to the property should remain in the plaintiff until the check spoken of was paid, then the sale was conditional, and the plaintiff would be entitled to recover. There was no dispute about the material facts in the case, and as upon the undisputed facts there was no sale of any kind, the proposition relating to a conditional sale was wholly immaterial. The court should have so treated it, as well in the instructions given of its own motion as in those refused upon the request of the defendants. If, however, the instruction given was erroneous, it was because, on all the facts assumed in it, the law was stated more favorable to the defendants than the rule warrants. If all the facts recited were proved, there was no sale of any kind, and the defendants were liable.

This practically disposes of the instruction prayed by the defendants. The difficulty with the instruction is, that it is not predicated upon a state of facts upon which a sale of any kind can be founded, or upon which any apparent title, right ·or authority of the person who obtained the cattle by fraud ·can be based. It proceeds upon the theory that the bare delivery of the cattle, under the expectation that they were to

be shipped to a firm engaged in selling cattle on commission, would be sufficient to defeat plaintiff's right. · We can not give our assent to this proposition, as applied to the facts in this case.

The fact that possession of the plaintiff's property was obtained by the fraudulent practices alluded to, and under circumstances which neither divested nor in any manner affected his title, could invest the wrong-doer with no such apparent authority as to enable him by any means to communicate any right or title to another; and this would be so even though the plaintiff at the time he delivered the cattle supposed he had sold them to Fort, Johnson & Co., to be resold by them as commission men or factors.

Alexander & Co. can only protect themselves by showing some title, right or authority, real or apparent, in the fraudulent possessor of the cattle.   In brief, the instruction asked, as applied to the undisputed facts, proposes, that if possession of the plaintiff's cattle was obtained from him by a person who by means of false devices induced, in plaintiff's mind, the belief that he was selling and delivering them to a responsible firm of commission men, to be resold, when in fact he was not selling them to any one, then the person so obtaining possession had apparent authority to deliver them to the commission men, in such manner that they could transfer the title to Alexander & Co., so as to shield them from liability.   The only case brought to our notice which seems to lend any support to this view is *Roach* v. *Turk,* 9 Heisk. 708. The facts in that case were that Turk sent three bales of cotton to Commerce Landing, on the Mississippi, to be shipped to Roach & Co., commission merchants at Memphis.   Ware, a clerk of the shipping agent at the landing, received the cotton in the absence of his principal, and, instead of shipping it in the name of Turk, shipped it in his own name.   The commission merchants, without notice of the real owner, sold the cotton and paid the money over to Ware.   It was held,

Alexander *et al. v.* Swackhamer. ·

overruling an earlier case, that the commission men were not liable to Turk, as for a conversion, without a demand for the cotton or its proceeds while it was in their hands.

Upon an examination of the case, it will be found that the non-liability of the commission men was predicated upon the fact that they neither had the property, nor the proceeds arising from its sale, in their hands at the time it was demanded of them. Without yielding our assent to the doctrine of the case cited, which we think is opposed by the authorities we have already cited and many others, we think it clearly distinguishable from the case before us. The cattle in question were the plaintiff's property when Alexander & Co. received and sold them. The proceeds of the sale remained in their hands when the suit was commenced, and they asserted a right to it adverse to the plaintiff. This, on the doctrine of *Roach* v. *Turk, supra,* made them liable, as for a conversion.

If, upon the facts assumed in the instruction asked by the defendants in this case, it had appeared that a conditional sale had actually been made, an entirely different question would have been presented. In such a case, it might well be, although we decide nothing on the subject, that the purchaser on condition would be clothed with such apparent authority as that the severe rule of law applicable here would not be applied. Possibly, the remedy of the vendor who confers upon another an apparent title by a conditional sale, may be restricted to the right to recover the property, and that no one can be held responsible in tort for its conversion who merely "exercises such dominion over it, as is warranted by the authority thus given." *Hills* v. *Snell,* 104 Mass. 173; *Burbank* v. *Crooker,* 7 Gray, 158; *Vincent* v. *Cornell,* 13 Pick. 294.

As there is no error found in the record the judgment is affirmed, with costs.

ELLIOTT, J., did not participate in the decision of this case.

Filed Jan. 22, 1886.

## ON PETITION FOR A REHEARING.

MITCHELL, J.—It is contended in support of the petition for a rehearing, that, by delivering his property to the impostor under the circumstances disclosed, the appellee is estopped to assert, as against a good faith purchaser, that he had not, by such delivery, invested the impostor with apparent authority to sell the property. It is said the question is not whether the title passed by the transaction between the appellee and the swindler, but whether such an appearance of authority was created by delivering the cattle into his possession, with knowledge that they were to be shipped to a firm engaged in selling on commission, as that the appellee may not now assert anything to the contrary.

In the consideration of this question at the former hearing, our opinion was adverse to the view of the appellants in this regard. We held that as one of the essential factors to a contract—one of the contracting parties—was entirely wanting, no contract resulted, and hence no title passed, and that a delivery under the erroneous supposition that a sale had been made, neither invested the person to whom the delivery was made with title, nor with an apparent authority to sell or dispose of the property thus delivered. We adhere to this conclusion.

Our attention is called to the case of *Samuel* v. *Cheney*, 135 Mass. 278 (46 Am. R. 467). Upon an examination of the case we do not think it supports the appellants' contention. The origin of that case was a suit to hold a common carrier liable for goods delivered to a swindler. An impostor falsely personated a merchant in good credit, and ordered goods to be shipped to himself by the name of the merchant personated, at a given number. The goods were delivered by the carrier according to the directions upon them, to the person who actually sent the order. The consignor supposed the order was from the merchant. The merchant neither gave the order nor received the goods, but the carrier delivered

the goods at the place to which they were directed and to the person who actually ordered them. It was held that the contract of the carrier was, not that he would ascertain who was the owner of the goods and deliver to him, but that it was sufficient to exonerate the carrier from liability for negligence if he delivered the goods according to directions to the person to whom they were sent. That the consignor directed and sent the goods to a person different from the one he actually intended, could not make the carrier liable for negligence in delivering the goods at the place to which they were directed and to the very person who ordered them. No question of title or apparent authority was involved in the case. The sole question related to the carrier's negligence.

The appellee was not estopped on the ground of negligence in delivering the cattle under the circumstances disclosed. To constitute an estoppel the party sought to be estopped must have designedly done some act or made some admission inconsistent with the claim or defence which he proposes to set up, and another must have acted on such admission with his knowledge and consent.

The owner of the cattle was induced to believe that he had made a sale to Fort, Johnson & Co. Acting on that belief, he delivered the property, as he supposed, to a member of the firm. For want of a purchaser no contract of sale resulted. No authority or appearance of authority was either conferred or attempted to be conferred upon the impostor other or different from that which would have attended a sale. When it resulted that no sale took place, the delivery and all the incidents of the transaction were a nullity and ineffectual to support the claim of the purchaser. It was void *ab initio.* Unless negligence resulting in injury to another could be imputed to the owner of the property after he discovered, or might have discovered, the deceit practiced upon him, he had the right to treat the property as his own, and recover as for a conversion.

Upon the subject generally, see *Edmunds* v. *Merchants, etc.,*

*Co.*, 135 Mass. 283; *Thacher* v. *Moors*, 134 Mass. 156; *Rodliff* v. *Dallinger*, 1 New Eng. Rep. 508; S. C., 4 N. E. Rep. 805.

The petition for a rehearing is overruled.

Filed April 1, 1886.