## PORTER v. ROSEMAN.

[No. 20,609.   Filed June 30, 1905.]

1. PAYMENT. — *Banks and Banking.* — *Principal and Agent.* — Where plaintiff deposited notes, executed by defendant's clerk, in his bank at New York and such bank sent them to an Indiana bank for collection, such Indiana bank is plaintiff's agent, and a payment to such bank is a payment to plaintiff.   p. 258.

2. CONVERSION.—*Appropriation of Principal's Money.*—*Title.*—A clerk, who takes his employer's money to pay notes due from such clerk, acquires no title by his conversion and confers no title on the payee.   p. 258.

3. SAME.—*Money.*—*Third Party without Knowledge.*—Where a clerk took his employer's money, without right, and paid same to his creditor, in discharge of notes due from such clerk, such money remains the property of such employer regardless of the fact that such creditor knew nothing of such conversion, when he received it.   p. 258.

4. SAME. — *Money.* — *Identity.* — Where a clerk converts his employer's money to his own use in the payment of such clerk's debts, such employer has a right of action against the creditor receiving such money for money had and received, a promise to pay being implied in law, and it is not necessary to trace the identical money into such creditor's hands, receiving the benefit thereof by credit on his bank account being sufficient.   p. 258.

5. SET-OFF AND COUNTERCLAIM.—*Equitable.*—Equity will take cognizance of a set-off in defendant's favor where necessary to effect a clear equity or prevent irremediable injustice.   p. 259.

6. SAME.—*Equitable.*—*Nonresidence.*—*Insolvency.*—Nonresidence or insolvency of the plaintiff is a good ground for the interposition of an equitable set-off by defendant.   p. 259.

7. SAME.—*Equitable.*—*Theory of.*—The court in enforcing an equitable set-off proceeds upon the theory that one demand is *pro tanto* a satisfaction of the other.   p. 261.

From Tipton Circuit Court; *J. F. Elliott,* Judge.

Action by Abraham Roseman against Robert L. Porter. From a decree denying a part of defendant's set-off, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Gifford & Gifford,* for appellant.
*John P. Kemp,* for appellee.

HADLEY, J.—This is an ordinary action by appellee against appellant, on an open account for goods sold and delivered. Answer in set-off. Reply said to be by general denial, but it is not in the record. Special findings, conclusion of law, and judgment in favor of appellee. The evidence is not in the record. The question for decision arises upon the conclusion of law and motion to modify the judgment.

The special findings disclose the following facts: Prior to the commencement of this action there was owing the plaintiff (appellee), a resident of New York, from the appellant, $249, for goods sold and delivered. There was also owing the plaintiff from William Mount, a former merchant of Elwood, for goods sold and delivered prior and subsequent to June 10, 1897, $432. On said June 10, 1897, Mount was in the employ of the defendant on a fixed salary, and had charge of the defendant's jewelry store in Elwood. On the latter date the plaintiff's agent, knowing that Mount had no interest in the defendant's said store except as salesman, called upon Mount therein for a settlement of his indebtedness to the plaintiff, and during the call assisted Mount in making a sale of a diamond belonging to the defendant, and received $35 of the proceeds, which he credited to the account of Mount, and turned it over to the plaintiff. The balance of the account was arranged by Mount's executing to the plaintiff and delivering to said

agent his notes for the amount, payable in monthly instalments of $20 each, beginning October 31, 1899. The notes were delivered to the plaintiff in New York, and, as they severally became due, were placed by the plaintiff in a bank in New York for collection, and by that bank forwarded to a bank in Elwood, at which latter bank eight of said notes first maturing were paid by Mount from money belonging to the defendant, which he had received from sales made from said store. The plaintiff had no knowledge of the ownership of the money used in the payment of his notes. As they were paid the Elwood bank remitted a like sum of money to the New York bank, where it was credited to plaintiff's account, but there was no evidence that any part of the identical money paid by Mount was remitted to New York or received by the plaintiff.

The conclusion of law is that the defendant is entitled to a set-off for the $35 knowingly received by the plaintiff's agent from the sale of the defendant's diamond, and that the plaintiff is entitled to recover the balance of his claim.

The facts pleaded as an answer and equitable set-off are substantially the same as those found to be true in the special findings, and the exception reserved to the conclusion of law raises the question: Do these facts show appellant to be entitled to set off against the claim of appellee an amount equal to the sum of appellant's money found to have been converted and used by Mount in payment of the latter's debt to the appellee? The $35 received directly by appellee's agent from the purchase money for the diamond, with knowledge that it was appellant's money, was allowed by the court as a proper set-off, but the sum converted by Mount in the payment of his notes to the bank, to wit, $160, was disallowed, presumably, because (1) the identical money converted was not traced to appellee; and (2) when received appellee had no knowledge of the conversion. Was the conclusion of law right?

One of the facts found is that Mount wrongfully converted $160 of appellant's money and delivered it to appellee in discharge of a debt. It is true, the immediate delivery of the money was to the bank at Elwood, which bank transmitted it to the bank in New York, where it was credited to appellee. These banks constituted the agency selected by appellee for the collection of his notes, and in every proper sense a payment to the bank was payment to appellee. *Jones* v. *Kilbreth* (1892), 49 Ohio St. 401, 413, 31 N. E. 346; *Bank of Antigo* v. *Union Trust Co.* (1894), 149 Ill. 343, 351, 36 N. E. 1029, 23 L. R. A. 611.

It is plain that Mount acquired no title by the conversion, and that he transferred to appellee no better title to the money than he himself possessed. *Alexander* v. *Swackhamer* (1886), 105 Ind. 81, 55 Am. Rep. 180; *Shearer* v. *Evans* (1883), 89 Ind. 400; *Breckenridge* v. *McAfee* (1876), 54 Ind. 141.

Appellant's money, having reached the possession of appellee without authority or right, remained as much his property in the hands of appellee as it was in the hands of Mount *(Shearer* v. *Evans* [1883], 89 Ind. 400); and this too without reference to whether appellee, at the time of its receipt, did, or did not, know whose money it was. He received it from one who had no authority to dispose of it, and its appropriation to his own use was conversion. *Alexander* v. *Swackhamer, supra; Harlan* v. *Brown* (1892), 4 Ind. App. 319, 323. Appellee's innocence and good faith afford no protection against the rightful owner who has been tortiously dispossessed. *Breckenridge* v. *McAfee, supra.*

To charge appellee, it is not essential that appellant shall trace his identical money into the possession of appellee. It is sufficient to show that it went into his bank account. *Pearce* v. *Dill* (1897), 149 Ind. 136, 143, and cases cited.

Appellee thus having in his possession money which *ex aequo et bono* belonged, and ought to have been returned, to appellant, an action for money had and received might have been well brought for its recovery; and it was not material how the money came into his hands, if the plaintiff is justly entitled to receive it. In such a case, the law implies a promise to pay. *Daily* v. *Board, etc.* (1905), *ante,* 99, and authorities cited; *Glascock* v. *Lyons* (1863), 20 Ind. 1, 83 Am. Dec. 299; 15 Am. and Eng. Ency. Law (2d ed.), 1096, 1098, and cases collated.

The case then comes to this: The defendant, a resident of this State, at the commencement of this suit, owed the plaintiff, a resident of New York, the sum of $249; and at the same time the plaintiff, in equity and good conscience, owed the defendant $195. In this state of cross-demands, the plaintiff having come into this jurisdiction and entered suit for the recovery of his claim against the defendant, may the latter carry the case into equity and have set off against the plaintiff's demand the sum that is rightfully due him from the plaintiff; or shall the defendant be required to go to the state of New York for his remedy?

It is insisted by appellee's counsel that, conceding the validity of appellant's demand against appellee, there can be no set-off, because there is no such mutuality as is required by §351 Burns 1901, §348 R. S. 1881.

As applied to statutory actions, the force of the contention would be admitted, but since appellant rests his answer not upon the statute, but wholly upon the broad principles of equity, his right must be determined within the limits of that jurisdiction.

It is recognized by the courts of this State, and perhaps all other American states, that a court of equity will take cognizance of cross-claims between litigants, though wholly disconnected and wanting in mutuality, and set off one against the other whenever it becomes necessary to effect a

clear equity or prevent irremediable injustice. *Keightley v. Walls* (1866), 27 Ind. 384; *Carter v. Compton* (1881), 79 Ind. 37; *Cosgrove* v. *Cosby* (1882), 86 Ind. 511; *Sefton v. Hargett* (1888), 113 Ind. 592, 594; *Eigenmann* v. *Clark* (1898), 21 Ind. App. 129.

In Barbour, Law of Set-Off, 190, it is said: "If a court finds a case of natural equity, not within the statute, it will permit an equitable set-off, if from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by a cross-action." To same effect, see Bispham, Prin. of Eq. (6th ed.), §27.

Some of the conditions and circumstances recognized by the courts as invoking an equitable set-off are where joint credit has been given on account of individual indebtedness, and where the joint debt is a mere security for the separate debt of the principal, and when the action is upon a note or other contract against several defendants, any one of whom is principal and the others sureties, and in cases of insolvency and nonresidence.

With respect to nonresidence as a ground for an application of the principle, Frazer, J., in *Keightley* v. *Walls* (1865), 24 Ind. 205, says: "The rule in equity seems to be, not to grant the relief where the demands are wholly disconnected, as in this case, unless there are some special circumstances, such as the insolvency or nonresidence of the defendant, or other extraneous facts, to form the basis of equity jurisdiction." See, also, *Hannon* v. *Hilliard* (1882), 83 Ind. 362, 366. Nonresidence is recognized as a basis for the remedy in the following cases: *Forbes* v. *Cooper & Co.* (1889), 88 Ky. 285, 11 S. W. 24; *Bibb Land-Lumber Co.* v. *Lima Machine Works* (1898), 104 Ga. 116, 30 S. E. 676, 31 S. E. 401; *Quick* v. *Lemon* (1883), 105 Ill. 578, 587; *Edminson* v. *Baxter* (1817), 4 Hay. (Tenn.) 112, 9 Am. Dec. 751; *Davis* v. *Milburn* (1856), 3 Iowa 163; *North Chicago, etc., Co.* v. *St. Louis, etc., Steel Co.* (1894), 152 U. S. 596, 616, 14 Sup. Ct. 710, 38 L. Ed. 565.

In enforcing an equitable set-off the court proceeds upon the principle that one demand is, *pro tanto,* a satisfaction of the other, and that the real indebtedness is merely the balance. *Keightley* v. *Walls* (1866), 27 Ind. 384, 387; *Hannon* v. *Hilliard, supra.*

7.

It is said in *Forbes* v. *Cooper & Co., supra:* "It is certainly unconscientious for an insolvent party to coerce the payment of his claim when he is owing the other party an equal or larger sum, and thus leave the latter remediless; nor should a nonresident be allowed, under like circumstances, to enforce, through the agency of the courts, the collection of his debt, and compel the other party to seek a foreign jurisdiction for relief, and then perhaps find the debtor insolvent. If the object of litigation be the attainment of justice, assuredly such results should be prevented. Indeed, the doctrine of equitable set-off, to the extent it was formerly applied, was based upon moral justice, and to meet such cases as the above, thus preventing wrong. It was then not uncommon to stay an insolvent or nonresident debtor in the collection of his claim until damages, to which the complainant might be entitled against him, were liquidated under the order of the chancellor, and then apply them in satisfaction of his independent debt."

In *Quick* v. *Lemon, supra,* the following language is used: "It would seem to be inequitable to require the corporation to go to another state to collect its demand in an action at law, and we are inclined to hold that the nonresidence of the complainant, in connection with the fact he calls upon a court of equity to enforce his judgment, is sufficient to allow the defendant corporation to prove and set off its demand set up in the cross-bill against the judgment of the complainant."

These considerations lead us to the decision that the conclusion of law drawn from the facts proved under the answer of set-off was erroneous. The special findings are

so indefinite and uncertain in some important particulars that we are led to believe that the ends of justice may be best subserved by ordering a new trial.

The judgment is therefore reversed, with instructions to grant appellant a new trial.