OHIO CASUALTY INSURANCE COM-
PANY, an Ohio corporation,
Plaintiff-Appellant,

v.

Ruth L. SMITH, Richard Lowell Smith,
Donna Gene Smith and John C.
Smith, Defendants-Appellees.

No. 13385.

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1962.

See also 181 F.Supp. 654.

Douglas D. Seely, Jr., and Roland
Obenchain, Jr., South Bend, Ind., for
appellant.

Richard D. Bonewitz, South Bend, Ind.,
for appellee.

Before SCHNACKENBERG, CASTLE
and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Ohio Casualty Insurance Company, an
Ohio corporation, plaintiff, has appealed
from a judgment of the district court
against plaintiff, entered upon a directed
verdict for Ruth L. Smith, Richard Lo-
well Smith, Donna Gene Smith and John
C. Smith, defendants, at the close of
plaintiff's evidence.

This action was brought by plaintiff,
a bonding company, to recover a part of
$81,315.64 embezzled by Magdalen Mor-
enc, head of the savings department of
the St. Joseph Bank and Trust Company,
South Bend, Indiana, the loss to the bank
having been made good by plaintiff.

Ruth L. Smith, Richard Lowell Smith,
Donna Gene Smith and John C. Smith,
defendants, are described by plaintiff's

counsel as the persons who received a major portion of the embezzled funds directly from the embezzler.

The evidence showed that Morenc had been head of the savings department for many years prior to 1956 when it was discovered that she had been embezzling dating back possibly to 1942. She became acquainted with Ruth L. Smith, defendant, in 1949, according to Morenc, or in 1951 or 1952 according to Mrs. Smith, who met her when Mrs. Smith was selling merchandise from door to door. Some time thereafter Morenc embarked upon a long series of purchases of pillowcases, towels and other merchandise from Mrs. Smith, some of which, for quick service, was delivered to the bank during working hours, but most of which was delivered to the Morenc home. Morenc told Mrs. Smith that she was selling the merchandise. In their operations, Mrs. Smith delivered a sales slip to Morenc and kept a copy. When Morenc paid for merchandise, she gave Mrs. Smith a list of merchandise sold. The larger deliveries were on consignment to Morenc, which she would take to her club, making payment to Mrs. Smith for whatever the ladies there bought.

Mrs. Smith would go to the bank and ask Morenc if she had sold the things and she would put the money in Mrs. Smith's account, and return some things. Morenc received merchandise periodically from Mrs. Smith until 1956.

1. Plaintiff relies on Porter v. Roseman, 165 Ind. 255, 74 N.E. 1105, in support of its propositions that one who feloniously converts money acquires no title thereto, that one who receives money thus feloniously converted acquires no better right to it than the one converting it as against the lawful owner, and that this is true whether the recipient is a bona fide holder for value or not.

1. See 5 Ind.Law Journal 195.

2. State National Bank of Boston v. United States, 114 U.S. 401, 5 S.Ct. 888, 29 L. Ed. 149; Holly v. Domestic & Foreign Missionary Soc., 2 Cir., 92 F. 745, aff.

It appears that in Porter v. Roseman, supra, stolen funds were used to pay a pre-existing debt. Subsequently, Porter was followed in Peoples State Bank v. Kelly, 78 Ind.App. 418, 136 N.E. 30, where also the proceeds of converted money were used to pay a pre-existing debt.

■ Even so, Porter, as thus applied to its facts, stands against the weight of authority in the United States and against a recognized public policy that money must be permitted to flow freely in our economy.[1] The general rule is that one who receives money in good faith for valuable consideration prevails over the victim.[2]

A well-considered statement of the general rule applicable here is to be found in Merchants' Loan & Trust Co. v. Lamson, 90 Ill.App. 18, which involved a suit by appellant, a banking corporation, to recover money alleged to have been wrongfully taken from appellant by Van Bokklen, one of its tellers.

Van Bokklen received $2,000 from his father's estate and began trading through appellees' firm. E. R. Shaw, an employee of appellees, was aware of the position held by Van Bokklen in the appellant bank. Van Bokklen took from the moneys of appellant large sums, which were lost in deals in grain, stocks and provisions made through appellees as his brokers.

At 19, the court said:

"The theory upon which appellant sought to recover from appellees these moneys, thus embezzled by its employe, is, first, that appellees were in possession of knowledge of facts which should have put them upon inquiry which would have led to knowledge of the source from which Van Bokklen obtained the money thus paid by him to appellees as his agents and brokers; and second, that these

180 U.S. 284, 21 S.Ct. 395, 45 L.Ed. 531; Kelly Kar Co. v. Maryland Casualty Co., 142 Cal.App.2d 263, 298 P.2d 590, 62 A.L.R.2d 533; First National Bank of Birmingham, Ala. v. Gilbert & Clay, 123 La. 845, 49 So. 593, 25 L.R.A.,N.S., 631.

sums were lost upon gaming transactions, and hence the owner of them, appellant, can recover them as Van Bokklen could if they were his, from appellees, as parties to the illegal transactions. * * * "

The court said, at 20:

"While it is true that appellees, through their employe, Shaw, were aware that Van Bokklen was a teller in the appellant bank, yet there is no evidence in this record which establishes that appellee had any actual notice or knowledge of the fact that Van Bokklen was stealing from appellant the moneys which he was investing through appellees. The rule of law which applies in this State, and which controls upon the facts here presented, is that even if money transferred to an honest taker was obtained by the one transferring it through a felony, yet the honest taker, who received it without knowledge of the felony and in due course of business, would acquire good title as against the one from whom it had been stolen.

\* \* \* \* \* \*

"In most of the cases above cited, the rule is applied to commercial paper, but the same rule applies with even greater force to currency. * * * "

The court added, at 21:

" * * * Appellees are not shown to have had knowledge of the theft by which the moneys in question were obtained. At most it can only be said that there were grounds of suspicion, or that they were guilty of some degree of negligence. No bad faith upon the part of appellees can be predicated upon these facts. They took the money in the due course of business, and it had no earmarks."

■ We are constrained to apply Porter, as the law of Indiana, to cases which factually require the same legal conclusion, but not to cases involving significantly different facts. In the case at bar, there was no payment to Mrs. Smith of a pre-existing debt. Rather there existed a series of sale transactions, which were currently paid for from time to time by the fruits of the felonious operations of Morenc. Hence, there is no occasion to apply here the stringent rule of Porter. Moreover, there is no evidence whatever that Mrs. Smith knew of the circumstances or means by which Morenc obtained the money to pay for the merchandise. The court did not err in directing a verdict for defendants.

2. The district court denied plaintiff's motion to strike paragraph III of defendants' answer, in which they alleged that, in reliance on Morenc's apparent ownership in the money received from her by defendant, Ruth L. Smith, she continued to deal, sell merchandise, goods and wares to said Morenc without knowledge that the money used for the paying of this material was stolen, thereby changing her position to her detriment.

However, when plaintiff completed the presentation of its evidence, it became apparent that there was *no showing* (and hence no conflict in the evidence) that Mrs. Smith had knowledge of the thefts by which the monies in question had been obtained by Morenc. There was no question as to the burden of proof, because there was simply no proof of bad faith introduced by plaintiff. Plaintiff's evidence showed that Mrs. Smith received the money in the due course of her business dealings with Morenc and of course the money had no earmarks.

■ In this situation the allegations of plaintiff's complaint and the evidence which it produced in support thereof, showed that it was not entitled to recover, regardless of whether or not defendants had filed paragraph III of their answer. Therefore, we find no prejudicial error in connection with the district court's ruling on paragraph III.

3. The remaining contested issue has to do with the district court's permitting defendants, over objection, to cross-

examine plaintiff's witness Morenc as to Mrs. Smith's lack of knowledge that funds received from Morenc were embezzled by her from the bank.

■ This cross-examination was well within the latitude of proper cross-examination and the district court did not err in its ruling.

For the reasons which we have set forth, the judgment of the district court is affirmed.

Judgment affirmed.