INDIANAPOLIS SADDLERY COMPANY v. CURRY.

[No. 24,175. Filed March 9, 1923. Rehearing denied June 8, -1923.]

1. SALES.—*Procured by Fraud.*—*Purchase from Party Guilty of Fraud.*—The purchase of goods from a party who has, by fraudulent representations that a company which he. was organizing was in the market for a certain line of goods, and by ordering a bill of goods in the name of such corporation, induced a dealer in such line to cause goods of that character to be shipped and consigned to such corporation, the purchase having been made while the goods were in the possession of the party ordering them after reaching their destination, does not pass title to the goods.  p. 351.

2. CORPORATIONS.—*Contracts with.*—*Dealings with Agent.*—*Representations.*—Since a corporation can act and contract only through agents, statements made by a prospective purchaser to an agent and salesman of a corporation who took an order

for goods from such prospective customer are made to the corporation as much so as if made to one of its officers. p. 352.

3. TRIAL.—*Instructions.*—*Must be Applicable to Evidence.*—Instructions must be applicable to the evidence, and it is error to give instructions to the jury which are not. p. 352.

From Monroe Circuit Court; *Herbert A. Rundell,* Judge.

Action by the Indianapolis Saddlery Company against William S. Curry. From a judgment for defendant, the plaintiff appeals. (Transferred from Appellate Court under §1399 Burns 1914, Acts 1901 p. 569, §15.) *Reversed.*

*William A. Pickens, Linton A. Cox* and *Earl R. Conder,* for appellant.

*Robert G. Miller, James W. Blair* and *Jesse B. Fields,* for appellee.

EWBANK, J.—This was an action of replevin and conversion. Appellant filed a complaint in replevin, and, upon the suggestion that the goods demanded had been sold, it filed a second paragraph charging conversion. Each paragraph alleged that the plaintiff (appellant) was a corporation organized and doing business in the State of Indiana, and was the lawful owner of certain automobile tires and accessories, particularly described, of the value of $1,000; that on a date two days before the action was commenced, the plaintiff demanded possession of such goods, which demand was refused, and that plaintiff was thereby damaged. The first paragraph also alleged that the property had not been taken for a tax or fine, nor seized under an execution or attachment, and that it was believed to be detained in Monroe County, Indiana; while the second paragraph alleged that appellee had converted the property and appropriated it to his own use.

Appellee answered by a general denial, and by a para-

graph of special answer, alleging that he purchased the property in question for a valuable consideration from a person who was "the lawful possessor of same and had title to said property." The jury returned a verdict in favor of the defendant (appellee), on which judgment was rendered against appellant for costs. The only error assigned is overruling the motion for a new trial, by which the giving of certain instructions and the sufficiency of the evidence are sought to be reviewed.

That appellant was originally the owner of the goods is clearly shown, without dispute. The other evidence most favorable to appellee is to the effect that appellant is a corporation doing business at Indianapolis; that it shipped the goods in question to Bloomington, Indiana, tagged with the address of the "Overland-Martin Company" at that place and billed to the consignee by that name; that one John T. Martin took the goods from the railroad station; that Martin showed appellee the goods stacked up and leaning against the wall in a room in the basement of a hotel at Bloomington, with shipping tags on part of them marked "To the Overland-Martin Company from Indianapolis Saddlery Company"; that appellee traded to John T. Martin a second-hand automobile for about half of the goods at the hotel, and removed them to his store, but did not notice the shipping tags until after Martin had driven away with the automobile; that Martin told him the goods were paid for and clear; that the automobile appellee traded to Martin for such goods was worth $600; that the goods for which it was traded were invoiced to him at $600, and were worth that sum; that the goods described in the complaint were in appellee's store at Bloomington, Indiana, when appellant demanded them, but before the sheriff served the writ of replevin (the second day thereafter), appellee had sold all of them

"to get his money out of them"; that these goods were not sold to John T. Martin, delivered to him, nor shipped to him by appellant; that John T. Martin came to appellant's store in Indianapolis, and talked to a salesman in its employ, who had previously sold goods for appellant to a firm of which Martin was, at the time of such sales, a member; that he told the salesman he was organizing a company which would incorporate for $50,000, and that Mr. Lindsey and Mr. Kennedy would finance it and be officers of the company, while he would be general manager, and that he would have the company organized in a week or two; that, the next week, he came in again and gave the salesman a written order to appellant for the goods in question in the name of said Overland-Martin Company, after which he was introduced to the secretary-treasurer of appellant company, and repeated what he had said, including the statement that he and Kennedy and Lindsey were organizing the Overland-Martin Company; that Lindsey was the moneyed man; that they were getting the corporation papers drawn up and would have the organization perfected in a week or so; and that they had engaged space in part of a store (appellee testified that Martin had asked him for space in his store but was refused) ; Martin also told the secretary-treasurer, at the first or second interview, that his company was to have an agency for Overland automobiles when the organization of the corporation was completed, which the latter verified by inquiry; that when Martin first suggested purchasing for the company, he was asked for additional references, and then stated that two moneyed men, Lindsey and Kennedy, would be associated with him; that afterward a long distance telephone call in the name of the Overland-Martin Company, at Bloomington, Indiana, for appellant's said salesman, was received at appellant's office, when the salesman was

out, and when he returned and called that address, Martin answered, and told the salesman that "we have a place and are established" in part of a room, and that the organization was perfected; the salesman then referred him to the secretary-treasurer, to whom Martin said that they were in need of and ready for the goods; the order was then filled by shipping the goods addressed and billed to the Overland-Martin Company, and the goods were charged to said company on appellant's books, and invoices for them addressed to said company at Bloomington were mailed which were returned as unclaimed. Martin never suggested to appellant that he was purchasing or desired to purchase the goods individually, and there was no agreement or intent to sell or deliver them to anybody but the Overland-Martin Company, which Martin had said was being organized; appellant's said officer and agent thought they were selling the goods to said company, and had no other intention; they expected the company to get the goods, as it might be organized after the goods were ordered, and before they were shipped; no such corporation as the Overland-Martin Company ever was organized or authorized to do business in Indiana, and no partnership of that name was registered in Monroe county, Indiana. Appellant's secretary-treasurer was the one who extended the credit for the goods after the sale was reported to him. Appellee was a dealer in automobiles, supplies, accessories and tires, and purchased the goods from Martin in good faith, believing he had a good title and right to sell them. Much other evidence was less favorable to appellee.

John T. Martin did not testify. It does not appear what became of him after he drove away in the automobile for which he exchanged these goods. There was no evidence concerning the sale of the goods by appellant, to whom or in whose name the sale was made, or

its terms, or what was said at the time, except the testimony of the secretary-treasurer of appellant company and of the salesman in its employ. There was not a scintilla of evidence that Martin ever applied to appellant to purchase goods for himself, or that appellant sold him any goods on his own behalf, or that appellant ever extended him any credit, whether on the faith of what he was going to do in the future, or otherwise.

The authorities relied on by appellee, to the effect that one in possession of goods, to whom the owner, by fraudulent representations and false promises, has been induced to sell them for purposes of resale, can convey a good title by selling them to a good-faith purchaser by whom the purchase price is paid without notice of any defect in his title, have no application to this evidence. If the goods had been sold to Martin and shipped to Martin, under a promise on his part to convey them to the Overland-Martin Company, we should have an entirely different case, presenting questions which are not now before us, as to which we intimate no opinion.

The evidence most favorable to appellee only makes out a case where he bought, from John T. Martin, goods to which Martin had no title whatever, the possession of which Martin had obtained by falsely representing that he was buying them as agent for a corporation with large capital and wealthy stockholders, and taking possession of them without right when they were shipped to the supposed corporation. That such a purchase gave appellee no title as against the owner who had been thus tricked into shipping its goods to a distant point where the wrongdoer took them from the railroad station, has been decided by this court. *Alexander* v. *Swackhamer* (1886), 105 Ind. 81, 85, 91, 4 N. E. 433, 5 N. E. 908, 55 Am. Rep. 180;

*Peters Box & Lumber Co.* v. *Lesh* (1889), 119 Ind. 98, 100, 101, 20 N. E. 291, 12 Am. St. 367.

Appellant is a corporation, and can act and contract only through agents, and statements made by Martin to the salesman who took the order on behalf of 2. the Overland-Martin Company and to whom he applied to have the goods shipped, were no less made to appellant than what was said to the secretary-treasurer. The evidence does not sustain the verdict.

The court gave three instructions, numbered 8, 9 and 12, by which it submitted to the jury for decision the question whether or not appellee was entitled to 3. recover by reason of certain facts, including the suggested fact that the plaintiff (appellant) sold the goods in question to one John T. Martin. Since there was no evidence whatever that the goods were sold to John T. Martin, but the undisputed evidence was that the sale was negotiated on behalf of the Overland-Martin Company, that the order was given in the name of that company, that the goods were shipped, billed, invoiced and charged to that company, and that the intention was only to sell to it, and that credit to it was refused until it was made to appear that "moneyed men" other than Martin were to be in the company, and then that it had been organized, these instructions were not applicable to the evidence. Therefore it was error to give them. *Blough* v. *Parry* (1896), 144 Ind. 463, 470, 40 N. E. 70; *New York, etc., R. Co.* v. *Allen* (1916), 62 Ind. App. 391, 396, 113 N. E. 315.

The judgment is reversed, with instruction to grant a new trial.